# NLRB Quorum Requirements

The National Labor Relations Board may issue decisions even when only two of its five seats are filled, if the Board, at a time when it has at least three members, delegates all its powers to a three-member group and the two remaining members are part of this group and both participate in the decisions.

March 4, 2003

MEMORANDUM OPINION FOR THE SOLICITOR
NATIONAL LABOR RELATIONS BOARD

Your office has asked for our opinion whether, having delegated all of its powers to a group of three members, the National Labor Relations Board ("Board") may issue decisions and orders in unfair labor practice and representation cases once three of the five seats on the Board have become vacant.[1] We believe that the Board may issue such decisions and orders if the two remaining members are part of the three-member group to which the Board delegated all of its powers and if they both participate in such decisions and orders.[*]

## I.

The Board consists of five members, who are appointed by the President with the advice and consent of the Senate and serve staggered terms of five years. 29 U.S.C. § 153(a) (2000). The Board may "delegate to any group of three or more members any or all of the powers which it may itself exercise." *Id.* § 153(b). Although a "vacancy in the Board shall not impair the right of the remaining members to exercise all of the powers of the Board," the Board is subject to quorum requirements: "[T]hree members of the Board shall, at all times, constitute a quorum of the Board, except that two members shall constitute a quorum of any group designated pursuant to" the provision on delegation to groups of three or more members. *Id.*

The "primary function of the Board is to adjudicate any contested issues that arise in . . . unfair labor practice and representation cases, i.e. to issue final decisions and orders in the cases, usually after an initial or recommended decision has been issued by an administrative law judge (in unfair labor practice cases), or by a hearing officer or regional director (in representation cases)." Board Letter at

---

[1] Letter for Jay Bybee, Assistant Attorney General, Office of Legal Counsel, from Henry S. Breiten-eicher, Acting Solicitor, National Labor Relations Board, *Re: Request for OLC Opinion* (May 16, 2002) ("Board Letter"). In accordance with our Office's policies, the Board has agreed to be bound by the present opinion. *Id.* at 7.

[*] Editor's Note: In *New Process Steel, L.P. v. NLRB*, 130 S. Ct. 2635, 2640 (2010), the Supreme Court reached a contrary conclusion, interpreting section 3(b) of the National Labor Relations Act, 29 U.S.C. § 153(b), to require "that the delegee group [of Board members] *maintain* a membership of three in order for the delegation to remain valid" (emphasis in original).

3–4 (footnotes omitted); *see* 29 U.S.C. §§ 158, 159 (2000). As a matter of prudence, when the membership on the Board has fallen to two members, the Board has not issued decisions and orders in such cases. Board Letter at 2. The Board has not attempted to resolve whether a Board with three serving members could delegate its powers to itself as a three-member group and, when the membership of the Board and of the group fell to two, continue to issue decisions and orders on the theory that a quorum of two for the three-member group would remain. *See id.* at 2–3.[2]

## II.

In our view, if the Board delegated all of its powers to a group of three members, that group could continue to issue decisions and orders as long as a quorum of two members remained.

## A.

The statute permits the Board to "delegate to any group of three . . . members any or all of the powers which it may itself exercise." 29 U.S.C. § 153(b). In the proposed arrangement, the three remaining members of the Board would constitute themselves a "group" of the Board and would delegate to that group "all of the [Board's] powers." The statute further declares that, where the Board has delegated power to a group of three or more members, a quorum of the group shall be two members. *Id.* The provision for a two-member quorum of such a group is an express exception to the requirement that a quorum of the Board shall be three members: "[T]hree members of the Board shall, at all times, constitute a quorum of the Board, except that two members shall constitute a quorum of any group designated" by the Board. *Id.* Moreover, the statute states that "[a] vacancy in the Board shall not impair the right of the remaining members to exercise *all* of the powers of the Board." *Id.* (emphasis added).[3] We therefore conclude that the plain terms of section 153(b) provide that the Board could form a "group" that could exercise all of the Board's powers as long as it had a quorum of two members.

---

[2] The Board Letter might be read to leave open the possibility that the last two members, even without a delegation from three members, could act as a group with a two-member quorum. Because only "[t]he Board is authorized to delegate to any group of three or more members any or all of [its] powers" and "three members of the Board shall, at all times, constitute a quorum of the Board," 29 U.S.C. § 153(b), it is unclear how the remaining two members could take action in those circumstances.

[3] In the construction of an Act of Congress, "unless the context indicates otherwise—words importing the singular include and apply to several persons, parties, or things." 1 U.S.C. § 1 (2000). Thus, the provision under which "[a] vacancy in the Board shall not impair the right of the remaining members," 29 U.S.C. § 153(b), also applies to more than one vacancy, as long as the quorum requirement is met. *Cf. R.R. Yardmasters of Am. v. Harris*, 721 F.2d 1332, 1341 (D.C. Cir. 1983) (interpreting term "vacancies").

There is judicial authority for reading this statute to mean that the departure of one member of a three-member group designated by the Board would not prevent the remaining two members from acting. In *Photo-Sonics, Inc. v. NLRB*, 678 F.2d 121 (9th Cir. 1982), the Ninth Circuit upheld the decision of a three-member group when one member's resignation had become effective on the day that the group's decision had been issued. The court ruled that even if the resignation precluded the member from taking part in the decision, "a decision by two members of the panel would still be binding." *Id.* at 122. The court relied specifically on section 153(b)'s provision that two members of a group to which the Board has delegated powers shall constitute a quorum. *Id.* (referring to section 153(b) as section 3(b) of the National Labor Relations Act). In defining the term "quorum," the court drew an analogy to cases where courts having three members "have issued decisions by a quorum of two judges when the third died or was ill." *Id.* (citations omitted). In these cases, "[c]ourts have interpreted 'quorum' to mean the 'number of the members of the court as may legally transact judicial business.'" *Id.* (quoting *Tobin v. Ramey*, 206 F.2d 505, 507 (5th Cir. 1953)). Applying the analogy to the Board, the Ninth Circuit held that "[u]nder the view that 'quorum' means the number of members that may legally transact business, the Board's decision in this case is valid . . . because a 'quorum' of two panel members supported the decision." *Id.* The resignation of one member thus did not take away the remaining members' power to act.

We note that the legislative history of the statute, though far from exact on this point, is consistent with the view that delegations to groups of members may be used to ensure the Board's capacity to accomplish its business—a capacity that would otherwise be destroyed in the circumstances you have posited. The provision on delegations to groups of three or more members was first enacted in 1947 as part of the Taft-Hartley Act. The bill, as passed by the House, provided for a Board of three members—the same number as under prior law. *See* 93 Cong. Rec. 3549 (1947). The Senate bill called for expanding the Board to seven members, of whom four would be a quorum, and allowing delegation to any group of three members, of whom two would be a quorum. *See* S. Rep. No. 80-105, at 33 (1947). The purpose of this arrangement was to "permit [the Board] to operate in panels of three, thereby increasing by 100 percent its ability to dispose of cases expeditiously in the final stage, and to leave the remaining member, not presently assigned to either panel, to deal with the problems of administration[,] personnel, expenditures, and the preparation of the budget." *Id.* at 8. The conference committee, without giving any reasons, settled on a Board of five members, but retained the provisions for delegations to groups of three. H.R. Conf. Rep. No. 80-510, at 37 (1947). The intent thus seems to have been generally to enable the Board to handle more cases by dividing itself into panels. As the District of Columbia Circuit declared in a case upholding the National Mediation Board's delegation of its authority to a single member expected to remain in office, "it would seem that if the [National Mediation] Board can use its authority to delegate in order to

operate more efficiently, then *a fortiori* the Board can use its authority in order to continue to operate when it otherwise would be disabled." *R.R. Yardmasters of Am. v. Harris*, 721 F.2d 1332, 1340 n.26 (D.C. Cir. 1983).[4]

## B.

We recognize that, here, the Board would be creating a three-member "group" with the intent that it operate as a two-member group upon the departure of the third member. In *Photo-Sonics*, where the Ninth Circuit upheld the decision of a group whose membership had fallen to two, the Board evidently had not created the three-member group with the intent that it function with only two members, and there appears even to have been a dispute whether in fact only two members of the group had participated in the decision. 678 F.2d at 122. Furthermore, in *Photo-Sonics*, the Board as a whole continued to have four members, even after one member of the "group" resigned. *See* 254 Decisions and Orders of the National Labor Relations Board, at III (1982). Here, the Board itself would lack its quorum of three members, and the proposed arrangement would be designed with the purpose of dealing with that situation.

Nevertheless, the statute provides that once a delegation is made to a group of three or more members, the quorum of the group becomes two. It imposes no requirement that the group continue to have three members, as long as the two-member quorum continues. Furthermore, even if the three-member quorum of the Board as a whole no longer exists, a prior delegation of the Board would remain valid, because a vacancy in the position of a delegating authority does not invalidate prior delegations of institutional power by that authority. *See, e.g.*, *Yardmasters*, 721 F.2d at 1343; *Champaign Cnty. v. U.S. Law Enforcement Assistance Admin.*, 611 F.2d 1200, 1207 (7th Cir. 1979); *but see Yardmasters*, 721 F.2d at 1346–47 (Wald, J., dissenting). In addition, when the Board's membership has fallen to three members, the Board has developed a practice of designating those members as a "group" in cases where one member will be disqualified, and then proceeding to a decision with a quorum of the two members able to participate. Board Letter at 5–6. This practice suggests that three-member groups may be constituted even when it is foreseen that only two members will actually participate in a decision.

We also recognize that our conclusion arguably is in tension with dictum in *Yardmasters*. There, a divided panel of the District of Columbia Circuit held that a

---

[4] *But cf. Hunter v. Nat'l Mediation Bd.*, 754 F.2d 1496, 1498 n.1 (9th Cir. 1985) (because the final administrative action in the case was taken by a quorum of the NMB, the court does not "reach the question of the limits of NMB authority to delegate powers in the event of . . . vacancies" and "adopt[s] the rationale of *Yardmasters* only insofar as necessary for [the] conclusion that interim actions by [the single Board member] did not affect the ultimate validity" of the NMB's action); *Scheduled Skyways, Inc. v. Nat'l Mediation Bd.*, 738 F.2d 339, 341 (8th Cir.) (the "question of one-member certification" had become moot, and the court did not reach the issue), *appeal dismissed*, 746 F.2d 456 (1984).

single member of the National Mediation Board ("NMB"), acting under a delegation, could exercise the powers of that body when vacancies on the NMB temporarily had deprived it of its statutory quorum. The court ruled that the statutory provision allowing for delegation did not limit the powers that could be delegated; that the loss of a quorum on the NMB did not vitiate the delegation, because the statute provided that vacancies on the NMB would not affect the powers of the remaining members; and that the delegation did not conflict with the quorum requirement, because the statutory provision on delegation provided an independent mode for the NMB to conduct its business, apart from transacting business at NMB meetings. In answering the dissenting judge's argument that a single member could abuse the powers vested in the NMB, the court stressed that, "[u]nlike the National Labor Relations Board, the [NMB] is not principally engaged in substantive adjudications" and "does not adjudicate unfair labor practices or seek to enforce individual rights under [its governing statute]." 721 F.2d at 1345. The court might thus be understood to have disapproved of the use of delegations to deal with the lack of a quorum where an agency exercises the sort of substantive power that is vested in the Board. The court, however, did not analyze the statute applicable to the Board, and, under this statute, there is a separate *quorum* requirement for a three-member group. The arrangement that would be used to deal with vacancies on the Board, therefore, would not confer power on a number of members smaller than the number for which Congress expressly provided in setting the quorum. The possible abuse of the delegation power that the dissenting judge raised in *Yardmasters*, and the majority sought to avoid, would not arise under the statute governing the Board.

M. EDWARD WHELAN III<br>
*Principal Deputy Assistant Attorney General*<br>
*Office of Legal Counsel*