My Sister's Place v. City of Burlington and Lt. John Vincent

[433 A.2d 275]

No. 185-79

Present: **Barney, C.J., Larrow, Billings, Hill and Underwood, JJ.**

Opinion Filed June 2, 1981

*Skinner & Skinner,* Montpelier, for Plaintiff.

*Anthony B. Lamb* of *Paul, Frank & Collins, Inc.,* Burlington, for Defendant.

Hill, J. My Sister's Place, a nonprofit Vermont corporation, rented the second floor of a downtown Burlington building in June, 1975, with the intention of opening a women's center. Prior to extending its month-to-month lease to a six-month arrangement, agents of My Sister's Place met with Burlington deputy fire warden Lt. John Vincent, to discuss the renovations necessary to bring the premises into compliance with the relevant fire code. The Burlington City Code entrusts fire wardens with the duty of enforcing those codes.

At that meeting, plaintiff's agents informed defendant Vincent that they intended to use the space for a restaurant and a community-based social and cultural women's center, and expected approximately fifty people at meetings. Vincent was aware that the previous tenant had planned to open a restaurant. He also knew that the building was wood-core. Plaintiff's agents were given by him a list of specific improvements necessary to meet fire code requirements, including the installation of sheetrock, particular types of doors, two fire extinguishers, emergency lighting, exit signs and bannisters, and the repair of the stairs. Vincent informed plaintiff's agents that the restaurant area capacity would be restricted to 75–100 persons. He also asked for a list of specific activities planned at My Sister's Place. No list was ever provided.

About ten days later, plaintiff's agents were issued a building permit by the Burlington building inspector so that the renovations could be made. Workers were hired and construction commenced. All employees agreed to defer receipt of their wages until after My Sister's Place opened, but they kept track of the hours worked.

In September, 1975, Vincent was asked to inspect the premises to determine the proper placement of fire extinguishers and fire doors. At that meeting, plaintiff's agents mentioned

for the first time that a bar would be installed and that My Sister's Place would apply for a liquor license after the restaurant opened. Vincent responded by informing plaintiff's agents that they could have neither a restaurant nor a bar, attributing his earlier approval of a restaurant to his being unfamiliar with certain provisions in the fire codes for wood-core buildings.

Plaintiff sued Vincent and the City of Burlington, claiming it acted in reliance of Vincent's negligent statements to its detriment in the sum of $12,749.00. Plaintiff later amended its complaint to demand $25,806.98. Defendants waived their right to a jury after the first complaint, V.R.C.P. 38(d), but, in response to the amended complaint, attempted to revive that right. The trial court rejected the request for a jury.

The trial court concluded that Vincent was negligent in performing his duties, that plaintiff's agents relied upon his statements, and, as a result, suffered damages. Citing *Verrill v. Dewey*, 130 Vt. 627, 629, 299 A.2d 182 (1972), and *Nadeau v. Marchessault*, 112 Vt. 309, 311, 24 A.2d 352 (1942), the court ruled that Vincent was immune because he was acting in a quasi-judicial capacity, and dismissed that portion of the complaint. Burlington was held liable for $6,110.73, the court explaining that the City is responsible for the negligence of its agents.

Burlington appeals, claiming that the trial judge made errors of law and incorrectly calculated damages. Plaintiff did not challenge the court's decision concerning Vincent.

## I.

Central to finding Burlington liable was the lower court's determination that the City was not protected by the doctrine of sovereign immunity. 29 V.S.A. § 1403 provides:

> [W]hen a municipal corporation purchases a policy of liability insurance under section 1092 of Title 24 . . . it waives its sovereign immunity from liability to the extent of the coverage of the policy and consents to be sued.

There is no dispute that Burlington has an insurance policy covering the present damage action. Because of that policy the trial judge ruled that the defense of sovereign immunity was not pertinent to the suit.

Defendant, however, claims it is protected by sovereign immunity both because plaintiff did not properly plead or prove waiver of the defense.

While sovereign immunity is not considered an affirmative defense in Vermont, *Lemieux* v. *City of St. Albans*, 112 Vt. 512, 516, 28 A.2d 373 (1942), we need not reach the issue of whether plaintiff's original pleadings provided sufficient facts to raise the issue. Pleadings are treated as conforming to the evidence introduced by consent during the course of litigation, V.R.C.P. 15(b), and defendants' answers to interrogatories established that the City had insurance coverage.

Defendant also claims that it shares the quasi-judicial immunity enjoyed by its employee, Vincent. While a public officer performing his official duties is immune from suit, *Verrill, supra*, 130 Vt. at 629, 299 A.2d at 183, support provided for the proposition that Burlington shares that protection is inapposite. Defendant, for example, cites *Norton* v. *United States*, 581 F.2d 390 (4th Cir. 1978), but that case clearly rests upon an interpretation of a particular federal statute, and the court so restricted its holding. *Id.* at 395 n.7. *City of Hialeah* v. *Hutchins*, 166 So. 2d 607 (Dist. Ct. App. Fla. 1964), also cited by defendant, does not raise the issue of how an employee's immunity affects a city's liability.

The immunity waiver elucidated in 29 V.S.A. § 1403 makes no mention of the governmental unit vicariously enjoying an employee's immunity, and we will not strip the statute of its plain meaning nor ignore the obvious intention of the Legislature. See *State* v. *Lynch*, 137 Vt. 607, 611–12, 409 A.2d 1001 (1979).

## II.

Burlington also challenges the trial judge's conclusion that it should be estopped from disclaiming liability for damages resulting from its agent's representations to plaintiff.

Vincent was a duly authorized agent of the City charged with the duty of enforcing the National Fire Safety Code. Concomitant with that duty is the charge of knowing the law and properly advising the public. There is no dispute

that Vincent was acting within the scope of his employment throughout his dealings with plaintiff's agents. While the doctrine of estoppel must be applied with great caution when the government is the involved party, *Champaign County, Illinois* v. *United States Law Enforcement Assistance Administration*, 611 F.2d 1200, 1205 (7th Cir. 1979); 28 Am. Jur. 2d *Estoppel and Waiver* §§ 129, 139, nevertheless when a government agent acts within his authority, the government can be estopped by his actions, *Molton, Allen & Williams, Inc.* v. *Harris*, 613 F.2d 1176, 1179 (D.C. Cir. 1980); *Morris* v. *Andrus*, 593 F.2d 851, 854 (9th Cir. 1978). See also *Village of Morrisville Water & Light Department* v. *Town of Hyde Park*, 129 Vt. 1, 270 A.2d 584 (1970).

The doctrine of equitable estoppel precludes a party from asserting rights which otherwise may have existed as against another party who has in good faith changed his position in reliance upon earlier representations. See *Dutch Hill Inn, Inc.* v. *Patten*, 131 Vt. 187, 193, 303 A.2d 811 (1973); *Precious Metals Associates* v. *Commodity Futures Trading Commission*, 620 F.2d 900, 908 (1st Cir. 1980). "The doctrine of estoppel is based upon the grounds of public policy, fair dealing, good faith, and justice, and its purpose is to forbid one to speak against his own act, representations or commitments to the injury of one to whom they were directed and who reasonably relied thereon." *Dutch Hill Inn, Inc., supra*, 131 Vt. at 193, 303 A.2d at 815. As we recently elucidated in *Town of Bennington* v. *Hanson-Walbridge Funeral Home, Inc.*, 139 Vt. 288, 293-94, 427 A.2d 365, 369 (1981), the four elements of equitable estoppel are: "(1) [t]he party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury." The trial court's conclusions that plaintiff relied upon Vincent's representations, see *Liberty Mutual Insurance Co.* v. *Cleveland*, 127 Vt. 99, 103, 241 A.2d 60 (1968), and that plaintiff's actions were a proximate and reasonably anticipated result of defendant's agent's representations, see *McLaughlin* v. *Blake*, 120 Vt. 174, 179, 136 A.2d 492 (1957), are amply supported in

the record. See also *Dessureau* v. *Maurice Memorials, Inc.*, 132 Vt. 350, 353, 318 A.2d 652 (1974); *Armstrong* v. *Hanover Insurance Co.*, 130 Vt. 182, 185, 289 A.2d 669 (1972).

Defendant, however, argues that plaintiff's reliance upon Vincent's representations was unreasonable because plaintiff's agents had not informed the fire warden that they were contemplating adding a bar to the meeting center. "Courts will not predicate an estoppel in favor of one whose own omissions or inadvertence contributed to the problem," *Town of Bennington, supra*, 139 Vt. at 294, 427 A.2d at 369; *Novella* v. *Hartford Accident & Indemnity Co.*, 163 Conn. 552, 565, 316 A.2d 394 (1972). But the possible addition of a bar was not a principal intended use of the premises, see *Town of Bennington, supra*, nor did its potential existence mitigate the fact that Vincent negligently led plaintiff's agents to believe that a restaurant could be operated after certain renovations were completed. The City is not estopped from denying liability pertaining to blocking the operation of a bar. The damage award is limited to the consequences of the failure of the inspector to warn the plaintiff that the other plans should have been precluded by the fire code.

Defendant also claims that the doctrine of equitable estoppel is inapposite to this case because plaintiff has an adequate remedy at law. That doctrine, however, is applicable both in law and at equity. *Precious Metals Associates, supra*, 620 F.2d at 908.

## III.

During the course of the litigation below, the trial court excluded evidence pertaining to plaintiff's plans to serve liquor and refused to make a finding that minutes of a meeting held by plaintiff's representative lay the groundwork for the defense of assumption of the risk. It is difficult to ascertain the significance of defendant's claim that these rulings constitute reversible error, since defendant's brief is marked by a lack of authority or particular citation to the transcript of the case below. See *State* v. *Doria*, 135 Vt. 341, 376 A.2d 751 (1977). However, our discussion above concerning plaintiff's agent's silence about the bar answers defendant's complaint. Serving liquor was not a primary activity, nor was the

inability to open a bar reflected in the damages assessed against the City. Further, the trial court gave little import to plaintiff's agent's failure to provide Vincent with a list of specific activities planned on the premises, probably because the existence of the bar appears to be the only activity not made known to Vincent. The trial court's unwillingness to find that plaintiff assumed the risk of its injuries is adequately supported by the record, and we will not second guess that judgment. *Largess* v. *Tatem,* 130 Vt. 271, 280, 291 A.2d 398 (1972). See also *Wells* v. *Village of Orleans, Inc.,* 132 Vt. 216, 221, 315 A.2d 463 (1974).

## IV.

Defendant also claims that the court committed reversible error by refusing to grant a request for trial by jury. Defendant admits that the right to a jury was waived following the original complaint, V.R.C.P. 38(d), but claims that the right was revived when plaintiff filed an amended complaint.

If an amended complaint does not raise new issues, granting a request for a jury is a matter of judicial discretion. V.R.C.P. 39(b); see *Western Geophysical Co. of America, Inc.* v. *Bolt Associates,* 440 F.2d 765, 769 (2d Cir. 1971). Although dealing with federal rules, the Second Circuit Court adequately summarized the procedure we adopt: "The authorities are clear that when a party has waived the right to a jury trial with respect to the original complaint and answer by failing to make a timely demand, amendments of the pleadings that do not change the issues do not revive this right." *Id.* (citations omitted).

Defendant claims that the amended complaint raised for the first time issues dealing with liability based upon the issuance of the building permit and the doctrine of equitable estoppel. However, not only did the original complaint adequately apprise defendant of the role of the building inspector and lay the foundation for claiming the City's liability based on an estoppel theory, but when the matrix of facts pertinent to a complaint are not changed, the addition of a new legal theory for recovery is not sufficient to restore the right to a jury, *Las Vegas Sun, Inc.* v. *Summa Corp.,* 610 F.2d 614, 620 (9th Cir. 1979).

The decision whether to grant defendant's request for a jury was therefore discretionary, and there is no indication that the trial judge abused that discretion. *Id.* at 621.

## V.

 Defendant also challenges various aspects of the damage award. In tort, compensation is provided, as nearly as possible, to restore a person damaged to the position he would have been in had the wrong not been committed. *Emery* v. *Caledonia Sand & Gravel Co.*, 117 N.H. 441, 447, 374 A.2d 929 (1977). While an exact amount may be difficult to ascertain, a tortfeasor is assessed for damages which directly or proximately result from the wrong committed. See *Thompson* v. *Green Mountain Power Corp.*, 120 Vt. 478, 485–86, 144 A.2d 786 (1958). "Consequences which are contingent, speculative, or merely possible are not entitled to consideration in ascertaining the damages." *Howley* v. *Kantor*, 105 Vt. 128, 133, 163 A. 628 (1933).

 In light of these general principles, we find merit in defendant's claim that allowing damages for time spent in fund raising activities for plaintiff's organization was erroneous. Plaintiff provided no evidence concerning the success of the fund raising, so it is entirely possible that the organization gained, not lost, by the work. In addition, the causal connection necessary to award damages is too tenuous. Plaintiff has the burden of proving damages, see *Budney* v. *Zalot*, 168 Conn. 388, 388, 362 A.2d 861 (1975), and in the case of the employment contracts for a fundraiser, did not sustain the burden.

Defendant also challenges the lower court's failure to mitigate the damage award by the $966.00 given plaintiff by the landlord for the improvements made in the leasehold.

 Plaintiff directs our attention to cases dealing with the collateral source rule for support of the court's ruling that a set-off would be inappropriate. That rule allows plaintiff to make a full recovery against the tortfeasor even when compensated for injuries by a source independent of the tortfeasor. See *Northeastern Nash Automobile Co.* v. *Bartlett*, 100 Vt. 246, 258, 136 A. 697 (1927). However, that rule

is usually limited to compensation provided an injured party through insurance, unemployment benefits or similar compensation yielded because the plaintiff actually or constructively paid for it, or in cases where the collateral source would be recompensed from the total recovery through subrogation, refund or some other arrangement. The cases reflect the philosophy that a tortfeasor should not reap the benefits of a victim's providence. See *Helfend* v. *Southern California Rapid Transit District*, 2 Cal. 3d 1, 9–10, 465 P.2d 61, 84 Cal. Rptr. 173 (1970). Clearly the payment from plaintiff's landlord does not fit within the category of payments elucidated above, and a set-off should have been calculated.

Defendant further states that the trial judge improperly awarded damages based on the wages owed people who had worked for plaintiff, claiming that payments on the employment contracts were contingent upon the organization turning a profit.

Although the employees agreed to defer payment until after plaintiff was to open business, there is no evidence that the wages were conditional. It is true that expected profits from a new business are too speculative and uncertain to be considered in a damage award, *Berlin Development Corp.* v. *Vermont Structural Steel Corp.*, 127 Vt. 367, 372, 250 A.2d 189 (1968), but the mere fact that the employees were willing to defer receipt of wages does not make the amount owed any less certain. The trial judge found that the labor costs were not a contingent liability, and we will not disturb that finding. V.R.C.P. 52(a); *Johnson* v. *Russell*, 134 Vt. 209, 211, 356 A.2d 538 (1976).

Defendant also claims that compensation should not be granted for plaintiff's labor contract with an unlicensed electrician to do the wiring in the premises. Although defendant again provides little guidance in support of the claim, and plaintiff's obfuscated response cites no law, the parties apparently differ on whether the clean hands doctrine precludes recovery on the contract in question.

A contract whose formation or performance is illegal may be held void and unenforceable, *Davis* v. *Pennzoil Co.*, 438 Pa. 194, 209–10, 264 A.2d 597 (1970), but misconduct unrelated to the claim to which it is asserted as a defense

will not invoke the doctrine, *Republic Molding Corp.* v. *B. W. Photo Utilities*, 319 F.2d 347, 349 (9th Cir. 1963) ("What is material is not that the plaintiff's hands are dirty, but that he dirtied them in acquiring the right he now asserts, or that the manner of dirtying renders inequitable the assertion of such rights against the defendant."). The City could take action against the unlicensed electrician if that is warranted. See *In re Estate of Rotax*, 139 Vt. 390, 394, 429 A.2d 1304 (1981). However, defendant was not a party to the challenged contract, and a collateral illegality should not serve as a bar to a valid claim. By allowing recovery, we are not threatening the public policy reflected in the clean hands doctrine of denying a party the fruits of condemnable conduct.

As a final challenge to the damage award, defendant claims the judge erred by not allowing into evidence plaintiff's original interrogatory answer on losses. Defendant had asked for an itemized list of losses, and plaintiff replied by totaling construction costs of $3,010.93. Plaintiff updated the answer, seven months before trial, by requesting $7,088.75 for contracted labor and $2,138.23 out-of-pocket expenses. The trial court rejected defendant's claim that the original answer was an admission against interest. Since we are remanding this matter for recomputation of damages, we need not decide whether the evidentiary decision was prejudicial or grounds for reversal. However, original pleadings, though later revised, are generally admissible against the party filing the pleadings as an admission against interest. See *Shell* v. *Parrish*, 448 F.2d 528, 530 (6th Cir. 1971). These admissions are, of course, open to explanation by the party against whom they are offered. On remand, the original pleadings should be held admissible.

Defendant's claim that the trial judge should have imposed sanctions upon plaintiff pursuant to V.R.C.P. 37 for delay in complying with certain discovery requests fails since there is no evidence that there was prejudice to defendant. See *Crawford* v. *State Highway Board*, 130 Vt. 18, 25, 285 A.2d 760 (1971).

*Reversed and remanded for computation of damages in accordance with this opinion.*