**Stanley Fleury and Harry Fleury v. Town of Essex Zoning Board of Adjustment**

[449 A.2d 958]

No. 245-81

Present: Barney, C.J., Billings, Hill, Underwood and Peck, JJ.

Opinion Filed July 8, 1982

*Paul D. Jarvis* of *Blum Associates, Inc.*, Burlington, for Plaintiffs-Appellants.

*Perry & Schmucker*, South Burlington, for Defendant-Appellee.

**Underwood, J.** Plaintiffs, owners and operators of an automobile repair business, appeal a decision of the Chittenden County Superior Court which upholds the Essex Town zoning board's refusal to allow them to vary the terms of their conditional-use permit.

The original conditional-use permit issued by the defendant Town of Essex Zoning Board of Adjustment (Essex ZBA) in 1977 permitted the plaintiffs to construct a building housing a repair shop for Saab automobiles, a retail store for automobile parts, and a sign-making shop. As originally contemplated, the repair shop was to occupy about one quarter of the total floor space and fell within the definition of an automobile service station. Such a use was not a permitted use in the B-1 Retail Business Zone where plaintiffs wanted to locate, but was a conditional use. Accordingly, a conditional-use permit was issued and agreed to by plaintiffs. Among the conditions was that total outside storage be limited to six vehicles in a fenced-in area behind the building.

Plaintiffs' business did not develop as envisioned. As the trial court found:

> [T]hey park a substantially greater number of cars on the premises than originally contemplated; the rear storage space is filled with tanks and trash containers; the sign business has been discontinued; the entire facility is used for automobile repairs and parts sales; more cars are parked on the premises than approved; and there are more employees than represented.

For some time, plaintiffs have advertised motor sales; they have parked cars along the drive in front of the building; and they provide wrecker service, all contrary to the permit conditions.

The plaintiffs went back to the Essex ZBA with a new application for a conditional-use permit, seeking expanded parking, authority to sell used cars, permission to operate a body shop, and approval for a sign which said Stan's Auto And Body Shop.

On May 15, 1979, the Essex ZBA limited additional parking to behind the building, denied permission to advertise or operate as a body shop, and prohibited the sale of used cars.

Plaintiffs thereupon appealed to the superior court, pursuant to 24 V.S.A. § 4471, and sought a preliminary injunction to restrain the Essex ZBA from taking any action to prevent them from (1) erecting signs advertising Stan's Auto And Body Shop, Inc.; (2) parking cars along the driveway leading from Vermont Route 15 up to their building; (3) parking more than 6 cars in front of their building; (4) selling used cars; and (5) doing body work.

Essex ZBA cross-filed for a preliminary injunction against the plaintiffs, seeking to restrain them from selling or advertising the sale of used cars, erecting a sign advertising a body shop, or storing or parking cars in front of their building.

The trial court in effect affirmed the action taken by the Essex ZBA. On April 30, 1981, the superior court found that plaintiffs were operating their business contrary to the terms of the conditional-use permit issued to them in 1977 and contrary to the zoning regulations and therefore dismissed plaintiffs' appeal and granted the request of the Essex ZBA for an injunction.

Plaintiffs timely appealed to this Court, asking us to reverse both the court below and the Essex ZBA, and to rule that plaintiffs are lawfully entitled to sell used cars and to expand their parking. They make three arguments to support their contention that they should be allowed to sell used cars: (1) The only evidence in the record is that the sale of used cars is an accessory use to their original permit, and the

court's failure to so find was clearly erroneous, justifying reversal and remand for further findings or, given the age of the original proceedings, a new trial; (2) Sale of used cars is permitted under § 1115.2 of the Essex ZBA Regulations which allow approval of uses "consistent with the philosophy" of a particular zone even though they are not expressly permitted within that zone; (3) Since the initial Essex ZBA decision to allow the plaintiffs to operate their business in a B-1 zone was erroneous, it is estopped from limiting the plaintiffs to those uses permitted in a B-1 district, but must allow them to operate as if they were in an I-2 district, where they should have been required to locate.

The plaintiffs' argument that they are entitled to increase their parking flows from the right of a nonconforming user to grow and expand.

We take up these arguments seriatim.

## I A.

We think the trial court's order adequately disposes of the plaintiffs' claim that auto sales are an accessory use. Article XIII, § 1301 of the Essex Town Zoning Regulations defines accessory use as a "use customarily incidental and subordinate to the principal use and located on the same lot as the principal use." Plaintiffs' own evidence raises substantial doubt as to whether auto sales are in fact "customarily incidental" to plaintiffs' operations, regardless of whether their business is considered to be a service station or a repair shop.

The plaintiffs called a service station operator to testify as to whether auto sales are accessory to service stations. On cross-examination, he testified that while he had sold cars at his station in the past, he didn't "make a habit of it." Although he further testified that he thought other service stations also sold cars, the only specific example he could come up with when pressed was that he had seen one car with a for sale sign at another Essex service station six or seven years ago. A former Essex zoning official was called by the plaintiff to establish that auto sales are accessory to repair shops. He refused to concede that repair shops normally sell cars, saying only, "I don't have much experience with it. It seems to me that some of them do and some of them don't."

■ The trial court's findings adequately deal with this issue. The service station operator's testimony established that auto sales are not in fact "customarily incidental" to a service station, which is a permitted use in a B-1 district. Thus, the court specifically found, "Automobile sales are a different use than that contemplated by B-1 districts," and noted further that while it agreed with the plaintiffs' legal principles, "we do not believe they are applicable to the evidence in this case." We agree.

We need not decide whether auto sales are an accessory use to an automobile repair shop, a business permitted only in an I-2 district, given our disposition of the plaintiffs' claim that the Essex ZBA mistakenly allowed them to operate in a B-1 zone.

### B.

■ Plaintiffs' argument that they are entitled to sell used cars by virtue of Article XI, § 1115.2 of the Essex Zoning Ordinance is also without merit. Section 1115.2 provides in pertinent part as follows:

> In the event that a particular use is not set forth which in the opinion of the Board of Adjustment is consistent with the philosophy as set forth in Article XI for that particular district, said Board of Adjustment may allow such a use as a conditional use after proper hearing duly advertised.

The court specifically found that auto sales were not a use contemplated in a B-1 district, a finding to which plaintiffs took no exception. Moreover, § 1115.2 leaves the issue to the discretion of the Essex ZBA. Their decision will stand unless the plaintiffs can show an abuse of discretion which causes prejudice. *Finkle* v. *Town of Rochester*, 140 Vt. 287, 289, 438 A.2d 390, 392 (1981). No such abuse was alleged either here or below, and none appears in the record.

### C.

Plaintiffs' argument that the Essex ZBA should be estopped from barring auto sales is also unavailing. First, plaintiffs' argument relies upon the Essex ZBA having erred in the first

instance by issuing the 1977 permit for the plaintiffs to operate their business in a B-1 district.

Article XIII, § 1301 of the Essex Zoning ordinance defines an automobile service station and an automobile repair shop as follows:

> *Automobile Service Station:* Any lot or area of land, including the building or buildings thereon, which is used for the sale of any motor vehicle fuel or lubricant, or which has facilities for lubricating, washing or servicing motor vehicles by any means, but not including major body repairs.

> *Automobile Repair Shop:* Any lot or area of land, including the building or buildings thereon, which is used for the purpose of making major or minor repairs to motor vehicles, including painting, body work, and the sale of automotive parts, and provided that all motor vehicles located on the premises are for repair or rebuilding and not for salvage.

An automobile service station is permitted as a conditional use only in a B-1 Retail Business District and an automobile repair shop is permitted as a conditional use only in an I-2 Mixed Industrial District.

As Essex ZBA noted, the proposed businesses or services described by plaintiffs in their original application for a permit fell within the definition of an automobile service station. Moreover, the repair business as represented by plaintiffs was to occupy just one quarter of the building space. Only mechanical repairs were to be performed. Body work was expressly excluded. Used car sales were never mentioned to the Essex ZBA as a possibility. As explained to the Essex ZBA, plaintiffs' business could reasonably have been classified as an automobile service station or deemed philosophically consistent with the B-1 district, and thereby permitted as a conditional use pursuant to § 1115.2 of the zoning ordinance.

The record reveals a laudable attempt by the Essex ZBA to work with the plaintiffs and to apply the regulations in a manner which was flexible and sensitive to the plaintiffs' needs. We will not allow this willingness to militate against them, and thereby create a reason for zoning boards to apply

regulations rigidly and inflexibly with bureaucratic disregard for the particular situation at hand.

In any event, the Essex ZBA would not have been estopped even if it had mistakenly allowed plaintiffs' business into a B-1 district as a conditional use. Vermont law expressly states, "[i]n granting [a] conditional use, the board may attach such additional reasonable conditions and safeguards as it may deem necessary to implement the purposes of this chapter and the zoning regulations." 24 V.S.A. § 4407(2). The plaintiffs' plan to sell used cars involves leaving them on display in front of their building. This plan thus directly contravenes a condition of their permit, which limited the number of cars stored outside the building to six, and required that they be kept within a fenced area to the rear of the building.

■ Finally, "[c]ourts will not predicate an estoppel in favor of one whose own omissions or inadvertence contributed to the problem." *Town of Bennington* v. *Hanson-Walbridge Funeral Home, Inc.*, 139 Vt. 288, 294, 427 A.2d 365, 369 (1981). Since the sale of used cars is not a principal intended use of the premises, and the plaintiffs did not inform the Essex ZBA of their intent to move into this business area, the Board will not be charged with knowledge of the facts. *My Sister's Place* v. *City of Burlington*, 139 Vt. 602, 610, 433 A.2d 275, 280 (1981). Knowledge of the facts is an essential element of estoppel. *Id.* at 609, 433 A.2d at 280. In view of these factors, the Essex ZBA is not estopped from enforcing the agreed upon stipulations in conformance with town zoning regulations.

II.

■ We are unable to reach the parking issue because the plaintiffs' arguments do not respond to the actions of either the Essex ZBA or the superior court. Neither has prohibited the plaintiffs from expanding parking. The Essex ZBA, while rejecting the plaintiffs' plan to sell used cars in front of their building, specifically found that "[a]dditional parking behind the building within proper fencing does not adversely effect the character of the neighborhoods." Similarly, the court concluded, "[o]ther space is available for parking and, therefore,

parking in front of the building, which would adversely affect the visual appearance of the premises, is unnecessary." The plaintiffs' arguments on this issue go to whether they should be allowed to increase parking at all, not to where they should be allowed to park, and thus are not material to the order appealed from.

Moreover, plaintiffs' reliance upon *State* v. *Szymanski,* 24 Conn. Supp. 221, 189 A.2d 514 (1962), and *Vermont Brick & Block, Inc.* v. *Village of Essex Junction,* 135 Vt. 481, 380 A.2d 67 (1977), for the proposition that they must be allowed to expand their parking is misplaced. Both cases involved the enlargement or expansion of nonconforming business uses. "A nonconforming use is defined by statute to be 'a use of land or a structure which does not comply with all zoning regulations' where such use was proper prior to the enactment of the regulations. 24 V.S.A. § 4408(a)(1)." *Vermont Brick, supra,* 135 Vt. at 482, 380 A.2d at 68. Plaintiffs here do not qualify as a nonconforming use in a B-1 district. Their business was nonexistent prior to the adoption of the official zoning regulations for the Town of Essex on February 7, 1972.

*Affirmed.*