STATE OF VERMONT

ENVIRONMENTAL COURT

In re: Appeal of Addison     }
County Eagles, Aerie 3801    }
                          }  Docket No. 13-1-00 Vtec
                          }
                          }

Decision and Order on Appellant's Motion for Summary Judgment

Appellant, Addison County Eagles, Aerie 3801, appealed from a decision of the Zoning Board of Adjustment (ZBA) of the City of Vergennes denying its appeal of two notices of violation. Appellant is represented by Anthony Duprey, Esq. and Richard P. Foote, Esq.; the City is represented by James W. Runcie, Esq. A neighbor, Robert Fuller, who appeared as an interested person before the ZBA, did not enter his appearance in the appeal to this Court, although he would have been entitled to do so.

Appellant has stated three issues in its Statement of Questions: 1) whether Appellant is in violation of the zoning bylaws as alleged in the notices of violation; 2) whether the City had the ability to revoke a permit issued by the zoning administrator after expiration of the appeal period; and 3) whether the City's closed meetings denied Appellant the "due process required under" 24 V.S.A. § 4462. Appellant has moved for summary judgment on Questions 1 and 2 of the Statement of Questions.

The following facts are undisputed unless otherwise noted.

Appellant owns a private club located on an approximately 8.8 acre parcel of land in the R-1 Residential zoning district of the City[1]. A private club is a conditional use in the R-1 Residential district. At some time prior to 1992, Appellant appears to have been granted conditional use approval to built the main club building, but that approval and its conditions, if any, have not been submitted to the Court in connection with the present appeal.

In 1992, Appellant submitted an application to the then-Zoning Administrator for a zoning permit for a 100' x 32' one-story "picnic canopy" to be located near an existing pond in the northwest corner of its property. The application is blank as to the proposed setbacks. An attached end-view elevation showed the structure to be nine feet (interior dimension) in height at the eaves and 14' 4" (interior dimension) in height at the center peak. It was proposed to include a closed 8' x 8' storage room in one corner, with the balance to be "open sides and ends," although the gable ends of the roof are described as "closed gable ends on truss." The application is checked off that a conditional use permit was required and that development site plan approval was required, but there is no indication whether the applicant or the Zoning Administrator made those marks. The Zoning Administrator referred the application to the ZBA, which denied the application, finding that the activity associated with the proposed structure would adversely affect the character of the residential neighborhood, that the "capacity of the facility goes

beyond what was intended by the original plan," and that, to minimize adverse effects, such as noise, on nearby residences, all activities should be conducted indoors. Appellant did not appeal that decision, which became final. No application to the Planning Commission for site plan approval was ever made.

Seven years later, in April 1999, Appellant submitted an application for the identical proposal to the new Zoning Administrator, who had then been on the job for about six months. The underlying application form is identical to the one used in the 1992 application. Appellant's 1999 application also described the proposal as a 100' x 32' one-story "picnic canopy." As to the proposed setbacks, the first is marked N/A (not applicable) with a line extending through the remaining spaces for setbacks. A statement in parentheses that the maximum height will be 14' appears next to the 1-story designation. There is no indication on the form whether the applicant or the Zoning Administrator filled in the 'N/A' and the line for the setbacks, or wrote in the parenthetical statement regarding the maximum height. The application spaces to mark whether a conditional use permit is required and whether a development site plan approval is required are left blank. Appellant attached the same end-view elevation as had been attached with the 1992 application, and also attached a sketched site plan locating the structure near the pond, and showing a rough distance of 120' between the neighboring property line and the nearest edge of the pond. Without a side setback entry on the application itself, and without a clearer indication on the sketch plan, the Court must find that a 120' side setback condition was not made part of the application or the permit.

The Zoning Administrator approved the application on April 13, 1999, stating in full: "Accessory use building ─ Picnic area & complimentary [sic] storage ─ No sides (roof only)." No interested person appealed within the allotted 15 days, and the Zoning Administrator's decision became final on April 29, 1999. Appellant began construction on the weekend of May 8, 1999. The zoning permit form may not have been posted in a place visible from the road on May 9, 1999, but that fact is not material to any of the issues in this case, as it was not cited as a violation in the notices of violation, which date the violation as of May 14, 1999.

Shortly after construction began, at least one neighbor complained to various municipal officials that the construction violated the zoning ordinance. Mr. Fuller telephoned the chair of the ZBA on May 8, and wrote a letter to the City Council and to the ZBA dated May 11, 1999. The City Council discussed the matter at its meeting on May 11, 1999 and the ZBA held an "emergency meeting" on May 12, 1999 and determined that the permit had been issued in error because the canopy should have been considered by the ZBA as a conditional use or an amendment to the existing conditional use permit for the private club. At that meeting, the ZBA passed a motion "to declare the Permit for the "Picnic Canopy" invalid." The ZBA did not, however, revoke the permit for misrepresentation or on any other basis, nor did it direct the Zoning Administrator to do so.

On May 14, 1999, the Zoning Administrator sent a letter to Appellant to inform Appellant that "your permit for the construction of a "picnic canopy' has been determined to be issued in error by the City's ZBA," and to request that Appellant apply for a conditional use permit. Appellant did not submit an application for conditional use permit, and did not appeal the letter[2].

On May 27, 1999, the Zoning Administrator issued to Appellant the first of two notices of violation (No. 64). The notice describes the violations as " No zoning permit issued to construct a structure with the following characteristics: 1. within 61' 6" of the abutting property; 2. height of the structure varies between 15' 3" and 17' 3"; 3. size is 100' 4" x 38' 3". Appellant was directed either to attend the June 7, 1999 ZBA meeting " to discuss this issue" or to remove the structure by June 15, 1999. The parties do not state whether a representative of Appellant attended the June 7, 1999 meeting, which technically would have rendered Appellant in compliance with the first notice of violation. A note at the bottom of the notice refers to the May 14, 1999 letter that the City' s position is that the original permit was issued in error. Appellant timely appealed this notice of violation to the ZBA.

On July 2, 1999, the Zoning Administrator issued to Appellant the second notice of violation (No. 67), which specifically noted that it was supplemental and that No. 64 remained in effect. The supplemental notice describes the violation as " 1. No zoning permit" and " 2. Structure not in compliance with original (now invalid) permit, due to (i) construction within 61' 6" of the abutting property (ii) height greater than 14' (varies between 15' 3" and 17' 3")." Appellant timely appealed this notice of violation to the ZBA. The ZBA upheld both notices of violation.

There is no question that the application could (and probably should) have been denied as an impermissible successive application. A zoning administrator or ZBA need not consider a successive application for the same project rejected in a prior application unless either the application or some other circumstance has changed. In re Application of Carrier, 155 Vt. 152, 158 (1990), citing (cf.) In re Crescent Beach Assn., 126 Vt. 140, 141, (1966); applied by the Environmental Court in, e.g., Appeal of Jackson, Docket No. 43-2-00 Vtec (Vt. Envtl. Ct., May 22, 2000); Appeal of 31 Hyde St. Assn., Docket No. 218-11-98 Vtec (Vt. Envtl. Ct., March 27, 2000); Appeals of Miserendino, Docket Nos. 85-5-99 Vtec and 191-10-99 Vtec (Vt. Envtl. Ct., Jan. 13, 2000), Appeal of Wesco, Inc., Docket No. 4-1-99 Vtec (Vt. Envtl. Ct., Aug. 23, 1999).

There is no question that the application should have been denied by the Zoning Administrator as an application requiring referral to the ZBA for conditional use approval and to the Planning Commission[3] for site plan approval, just as the 1992 permit was referred. The proposal should have been required to obtain conditional use approval at least because it was an amendment to a existing conditional use permit. The proposal also should have been required to obtain conditional use approval because it does not qualify as a permitted use as an " enclosed accessory building," as it is not an enclosed building. It may also not qualify as " accessory" as it may not be " customarily incidental" to the private club building, and may not be " subordinate" to the private club building, however, the Court does not have before it the evidence necessary to make this latter determination.

The Zoning Administrator could have recalled the permit and remedied the error unilaterally, through April 28, 1999. However, any attempted unilateral reopening or alteration of an issued permit must be done by the issuing authority within the time allotted for appeal of that permit (that is, 15 days in the case of a zoning administrator' s action, and 30 days in the case of the ZBA). Appeal of Dunn, Docket No. 2-1-98 Vtec (Vt. Envtl. Ct., March 8, 1999); Nash v. Warren Zoning Board of Adjustment, 153 Vt. 108 (1989). Although a municipality may choose to withdraw an issued permit even after that time, at least where public health, safety or welfare

issues are implicated by the incorrect issuance of the permit, the municipality may also then be liable for the costs of a party's reliance on the incorrectly issued permit. See, <u>My Sister's Place v. City of Burlington</u>, 139 Vt. 602 (1981).

Once a permit has become final, it cannot be challenged either directly or indirectly, including by the City. 24 V.S.A. § 4472(a) and (d). See <u>City of S. Burlington v. Vermont Dep't. of Corrections</u>, 11 Vt. L. Wk. 219, 220 (2000). As this Court discussed in a case involving permit revocation for misrepresentation, <u>Appeal of Hurlburt</u>, Docket No. 27-2-98 Vtec (Vt. Envtl. Ct., Feb. 12, 1999), even a permit which has been issued without authority, or under a misapplication of the law, may not be appealed or collaterally attacked[4] after the expiration of the time for appeal. <u>Levy v. Town of St. Albans</u>, 152 Vt. 139, 142 (1989).

This is a separate issue from whether a zoning administrator may revoke a permit for misrepresentation, at least where the permit form warns the applicant that misrepresentation voids the permit, as it does in the present case. It is sound policy to reserve to the municipality this authority to revoke for misrepresentation. Otherwise, unscrupulous applicants would be tempted to misrepresent the size, intended use, or location of a project on a permit application, and thereby to succeed in obtaining a permit without alerting potential opponents or the zoning administrator to problems with the project under the zoning ordinance.

In the present case, as in the <u>Hurlburt</u> case, however, nothing about the 1999 permit application rises to the level of misrepresentation. The permit application identified the parcel, the size and location of the proposed new construction, and that the application was for an open-sided "picnic canopy." The Zoning Administrator could and should have determined from the information on the application that the application should have been referred to the ZBA as a conditional use, both because it was an amendment to a existing conditional use permit, and because it was not an "enclosed accessory building." It is not the responsibility of an applicant to determine whether a proposal requires a conditional use approval or site plan approval; that is the responsibility of the zoning administrator. Nor is it the legal[5] responsibility of an applicant to advise a new zoning administrator of the past history of an application.

Accordingly, based on the foregoing, Appellant's Motion for Summary Judgment is Granted in Part and Denied in Part. The City cannot revoke the improperly-issued zoning permit without liability to Appellant for damages flowing from that revocation. <u>My Sister's Place v. City of Burlington</u>, 139 Vt. 602 (1981). The size of the canopy conforms to the permit. A side setback of 120' was not established in the permit. Material facts are in dispute as to whether there is a height violation associated with the building as built; the permit may be enforced according to its terms, including requiring an interior height from the finished grade of the floor to the interior peak of 14' 4", and including restricting its use to "picnics." Questions 1 and 2 of the Statement of Questions are addressed by this decision; Question 3 may remain for decision, as well as the height violation in Question 1.

However, we also note for the guidance of the parties what is not addressed by the appeal before the Court in the present case. The canopy still appears to need site plan approval by the Planning Commission. The structure may or may not qualify for a certificate of occupancy under § 302 (which requires <u>both</u> compliance with its zoning permit and compliance with the Regulations).

The conditions of the private club's original conditional use approval (whatever they were) still apply and may be enforced; and it is possible that they include conditions that may govern whether any outdoor activities are allowed; whether any outdoor amplified music is allowed; whether any exterior lighting is allowed; whether any outdoor alcohol consumption is allowed; and whether any outdoor nighttime events are allowed. The performance standards in Article VIII of the Zoning Regulations may contain[6] a noise standard that must be met by existing as well as proposed uses. Further, the definition of private club appears to preclude either the club or the picnic canopy's being rented out to non-members <u>or</u> to be operated primarily for profit.

It appears to the Court that the remaining question in the Statement of Questions may be moot in the context of this decision, and that the appeal can be concluded on the basis of this decision. We will hold a brief conference to discuss whether anything remains for decision in this appeal on Wednesday, May 9, 2001 at the Addison Superior Court in Middlebury, at 11:30 a.m. Attorney Runcie and Judge Wright will be there for another hearing involving the City of Vergennes, scheduled for the morning. Attorneys Duprey and Foote may participate in person or by telephone, at their choice.

Done at Barre, Vermont, this 7th day of May, 2001.

_____
Merideth Wright
Environmental Judge

## Footnotes

1.   The sketch plan attached to Appellant's 1999 zoning permit application appears to show that only some 5.2 acres of Appellant's property is located in the City, with the remainder located in the Town of Ferrisburg. Neither party has made an issue of this fact. Both structures are located within the City's boundaries.

2.   Because this letter merely informed Appellant of the ZBA's conclusion that the permit had been approved in error, and requested Appellant to submit a conditional use application, Appellant's failure to appeal it has no preclusive effect, in contrast to the effect of a failure to appeal a notice of violation. In re Newton Enterprises, 167 Vt. 459 (1998).

3.    Section 306 appears still to require development site plan approval from the Planning Commission for this proposal.

4.     However, we note that such a permit, and any prior permit applicable to the facility, may be enforced according to its terms. See, Town of Bennington v. Hanson-Walbridge Funeral Home, Inc., 139 Vt. 288, 292-93 (1981).

5.     It may reasonably be seen as the ethical responsibility of an applicant to make that disclosure, but such a determination is beyond the jurisdiction of this Court, at least where the representation is not made by a lawyer.

6.     Page 21 of the Zoning Regulations was omitted from the copy supplied to the Court.