**STATE OF VERMONT**

**ENVIRONMENTAL COURT**

Appeal of Kevin Blakeman  }
            }
            }   Docket No. 72-5-03 Vtec
            }
            }

Decision and Order

Appellant Kevin Blakeman appealed from a decision of the Development Review Board (DRB) of the Town of Randolph, upholding the zoning administrator= s determination of the > zoning status= of Appellant= s property on Sunset Hill Road. This decision is an on-the-record appeal as the Town has adopted and implemented[1] the procedures necessary for such appeals.

Appellant is represented by Paul S. Gillies, Esq.; the Town of Randolph is represented by Peter M. Nowlan, Esq. In addition, Dan Baginski and Alan and Therese Heath entered their appearance as interested persons, representing themselves. The record was received by the Court from the Town, supplemented by a privately-produced transcript of the tape of the DRB hearing. The parties submitted written memoranda of law and were given the opportunity to but declined to request oral argument. Upon consideration of the record and the parties= memoranda, the Court concludes as follows.

In an on-the-record appeal, the factual findings of the administrative body are not conclusive, but they are given great weight. The Court must determine if substantial evidence exists in the record as a whole from which the factual findings of the DRB might reasonably be inferred. See, In re Petition of Town of Sherburne, 154 Vt. 596, 604-05(1990); In re Appeal of French, Docket No. 98-7-01 (Vt. Envtl. Ct., March 4, 2002).

Appellant Kevin Blakeman owns a 5.81-acre parcel of property at 741 Sunset Hill Road, in the Rural 5 zoning district of the Town of Randolph. The lot size requirement applicable to this district is found under ' 6.4.2 A Lot Requirements@ in the Zoning Regulations. Section 6.4 provides the requirements for both the RU3 and the RU5 zoning districts. The text of ' 6.4.2 A Lot Requirements@ begins with the sub-heading: A RURAL 3 ACRE AND RURAL 5 ACRE.@ The section goes on to provide the lot width, setbacks, building coverage and building height requirements common to both districts. While it would have been clearer for the regulations to have listed the lot size requirements separately for the two districts, the statement A RURAL 5 ACRE@ under ' 6.4.2 A Lot Requirements@ is sufficient to establish a minimum lot size of 5 acres for lots in this district. Appellant= s lot meets this lot size requirement. The parties have not established when the minimum lot size applicable to this property was first adopted.

Section 5.17.10 provides that, except for PRDs and PUDs, no more than one principal building may be placed on a given lot, unless each principal building and its accessory buildings and uses would be conforming if the lot were subdivided. Section 3.5 allows PUDs and PRDs to be approved allowing a greater density in certain sections of a property, but only if balanced by less density in other sections of a property so that the A overall density requirements of the total area are not exceeded.@ The parties have not established when these requirements of the zoning regulations were first adopted.

As of 1965, when a former owner Lester Welch took title to the property, the property was improved with a single-family house and a barn (A the old barn@ ), with access to Sunset Hill Road by a driveway (A the easterly[2] driveway@ ). The house appears[3] to have been composed

of an original 1½-story, 28' x 24' main house with a wrap-around covered porch, adjoined by a 1-story 16' x 27' unheated ell. The house had one or one-and-a-half bathrooms and associated plumbing; the listers= card does not specify the type of septic system that served the house. We will refer to the house site as A the easterly dwelling site.@ The old barn was farther from the road and farther to the east on the property than the original house site. As the old barn never had a septic system and was not used as a dwelling, we need not refer further to the old barn or to any agricultural sheds for the purposes of this decision.

The Town of Randolph must have had former zoning regulations[4] in effect at least as of 1971, as the first zoning permit applicable to the property was issued in 1971. However, no party has provided the zoning regulations in effect at any time prior to 1988, and we therefore cannot determine whether the original house and barn conformed with the initial zoning regulations adopted in the town.

In 1971 the property received zoning permit #71-101 to place a 50' x 12' mobile home and 500 gallon septic system westerly on the property, 200 feet diagonally away from the main house, and 250 feet from the road, with a separate driveway (A the westerly driveway@ ). This mobile home is reflected also on the listers= card for 1973 as having been placed on the property at least by 1972. We will refer to the location of this second dwelling and its septic system as A the westerly dwelling site.@ We must assume that the second dwelling on the property conformed with the zoning regulations in effect in 1971, as it received a permit. However, without the zoning regulations in effect between 1971 and 1988, we cannot determine whether or when the second (westerly) dwelling became nonconforming.

In 1977 the property received zoning permit #77-4 to construct a 32' x 50' pole barn as a horse barn, near the westerly dwelling site and connected to the septic system serving the westerly dwelling site. The diagram for that permit application shows the original house and old barn and their driveway (the easterly driveway) and shows the new barn location 108 feet from the road, with its driveway (the westerly driveway). The diagram does not show the mobile home permitted in 1971; there is no evidence in the record to show whether or for how long that mobile home remained near the horse barn. As shown on the listers= card diagram, the horse barn is 32' x 80' in size, and has a half bath; as shown on the listers= card under > miscellaneous buildings,= it is 33' x 88' in size. No issue is raised in the present proceedings regarding the size of the horse barn. That barn was constructed and is not at issue in the present proceedings.

The original house was destroyed by fire in 1982. In 1982, the property received zoning permit #82-14 to place a mobile home A on a temp[orary] site to be moved at a later date to [the] former house site.@ The diagram on the permit application shows the former house site (labeled as A ex house@ ) and the easterly driveway; it also shows the horse barn and the proposed trailer site on either side of the westerly driveway. The diagram does not show a seasonal dwelling or camp at or near the location of the easterly house site. The mobile home was placed on the property. We must assume that the placement of this dwelling on the property conformed with the zoning regulations in effect in 1982, as it received a permit. However, without the zoning regulations in effect between 1982 and 1988, we cannot determine whether or when the westerly dwelling became nonconforming.

At some time between 1982 and 1993 a so-called camp building appears to have been placed to the north of the former house foundation. It had toilet facilities connected to a septic system which is most likely the septic system that had served the house. It may be the building that is diagrammed on the listers= cards as a 14' x 16' building that is insulated, sheetrocked, and with a bath. Without knowing when the camp was constructed, or whether it was occupied seasonally or year-round, and without having the zoning regulations in effect at that time, we cannot determine whether or when the camp was grandfathered as a seasonal or year-round dwelling, whether it succeeded to the grandfathered status of the original dwelling, or whether or when it became nonconforming.

Appellant= s predecessors Sandra Beaudet and Benoit Beaudet acquired the property in June of 1993. On December 8, 1993, they applied for and were granted zoning permit #93-86 to move the mobile home (> trailer= ) that was located near the horse barn to the location of the camp at the easterly dwelling site, and to attach it to the camp (and, presumably, to the camp= s septic system). There is a notation on the face of that permit in a handwriting apparently different from that of Sandra Beaudet, stating in full: A 6/27/94 - modified, trailer will remain where placed, to be turned into storage! New/used trailer to be placed next to camp.@ A mobile home was attached to the camp in about 1995 and was occupied. Ms. Beaudet removed this mobile home in August or September of 2002, shortly after Appellant had purchased the property and pursuant to their contract.

There is evidence in the record that both the easterly and the westerly dwelling sites were occupied as dwellings between 1995 and the summer of 2002 when Appellant acquired the property from Sandra Beaudet. Appellant promptly took steps to apply to improve the septic system at the easterly dwelling site, and was then informed by the Zoning Administrator that the property had been in violation of its permits by having two dwellings on one lot, by having no certificate of occupancy under Permit No. 93-86, and by having two sheds erected without permits; that the removal of the mobile home from the easterly dwelling site had cured the two-dwellings-per-lot violation; and that the sheds would qualify for permits if application was made, which would cure the remaining violation. Appellant appealed this determination to the DRB and then to this Court.

Before Appellant had purchased the property, the Zoning Administrator had told him that the two mobile homes then on the property were probably grandfathered, but she did not then make any formal determination of that fact and did not at that time look at the permits for the property to see what the permits required.

Without the zoning regulations in effect at the times the various dwelling sites were created and occupied, there is not sufficient evidence in the record from which the DRB (or this Court in an on-the-record appeal as a matter of law) could determine when the minimum 5-acre lot size went into effect for this district, which district requirements were applicable to this property at any given time, when the requirement of no more than one principal building per lot went into effect, when provisions for establishing PRDs went into effect, and when provisions went into effect limiting PRDs to lots that could comply overall with the density requirements.

Moreover, without evidence in the record of the periods during which the dwellings described above were in fact occupied as dwellings, there is not sufficient evidence in the record from which the DRB could have determined whether they acquired grandfathered status when the regulations were amended, or whether the use of either dwelling site was abandoned after the amended regulations took effect. If the two dwellings on the property were grandfathered and were not abandoned, then Appellant has the right to continue that use of the property, although not to expand it.

Because we must remand this matter for further proceedings before the DRB, we do not now address whether the discussions between the Zoning Administrator and Appellant prior to Appellant= s purchase of the property rise to the level of estoppel of the Town. In connection with the DRB= s consideration of this matter on remand, however, we note that even if estoppel were established against the Town, it would not necessarily result in a permit for two dwellings on the property. Rather, it might result in damages against the Town, for which a separate action would have to be brought in Superior Court. See, My Sister= s Place v. City of Burlington, 139 Vt. 602 (1981) (restaurant entitled to damages due to city fire inspector= s improper approval of restaurant use of an upstairs space in violation of the city fire code, but not entitled to open restaurant under that approval).

Based on the foregoing, it is hereby ORDERED and ADJUDGED that the March 28, 2003 decision of the DRB in this matter is hereby vacated and remanded for further proceedings consistent with this decision. The record does not contain adequate evidence from which the DRB could have concluded whether either or both of the two dwelling uses of the lot were grandfathered or permitted, or whether, if grandfathered, either grandfathered use was abandoned. Because this is an on-the-record town we cannot simply take evidence to determine these facts; instead we must vacate the DRB decision as not supported by substantial evidence in the record as a whole, and remand for the DRB to hold further proceedings to determine the dates of each qualifying event with respect to this property, the dates when various changes to the zoning regulations were enacted, and the property= s status at each of those new zoning enactments.

Dated at Barre, Vermont, this 15th day of January, 2004.

_____
Merideth Wright
Environmental Judge

---

**Footnotes**

[1.] The quality of the transcript of the record, with many references to "inaudible," and the inability to determine which witness was speaking at any particular time, suggests that the Town of Randolph may not have fully implemented the procedures necessary to produce a record capable of supporting an on-the-record appeal. E.g., see the following colloquy on unnumbered page 2 of the privately-produced transcript: Appellant's attorney: "I'm not sure of the procedures. Ah, does Mr. Blakeman speak directly? Do I ask him questions?" (Unidentified woman, apparently speaking for the DRB): "We're not that formal."

[2.] We have derived the directional descriptions from the "locus map" in the record, which shows that Sunset Hill Road runs in a roughly east-west direction at the location of this property, and from the 1971 permit application, which shows a north arrow.

[3.] From the 1973 listers' card in the record. Mr. Welch's 1971 zoning permit application describes the main house as 34' x28' in size, which may have included the porch and the ell.

[4.] The current zoning regulations show on their face that they were adopted in 1988 and amended several times since then. No party has provided the zoning regulations in effect prior to 1988.