Filed 04/30/25

VERMONT SUPERIOR COURT
Chittenden Unit
175 Main Street
Burlington VT 05401
802-863-3467
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 24-SC-01676

Polli Construction, Inc. v. Alana Brault

## FINDINGS, CONCLUSIONS, AND ORDER

In February 2023, Defendant Alana Brault reached out to Plaintiff Polli Construction's "Rot Doctor" division for a proposal to repair rot in and around the entry door to her home. Polli gave her an estimate for work on a time and materials basis; the estimate provided a range of $9,800-$11,900. Ms. Brault informed Polli that the repairs would be paid with grant funds, and that the granting agency required a fixed price contract. Polli prepared one. The contract set forth a defined scope of work, to include removal and replacement of the door and removal and repair of rot around the door frame and subfloor. To account for the fact that Polli would be taking on the risk of unforeseen complications, the contract price increased to $14,312.00; it included all labor, materials, and permits. Importantly, at least for the purposes of the present dispute, it did not include any work below the subfloor; instead it required Polli to "assess the framing under the floor because it is spongy when you walk on it." Finally, the contract made clear that "any work outside the scope above will be completed on a time and material basis." Ms. Brault signed the contract on April 25, 2023. Work did not begin until early summer.

One day into the job, one Polli's worker's advised Ms. Brault that Polli had discovered rot below the subfloor. Polli refused to continue work unless Ms. Brault signed a change order for additional work on a time and materials basis. At this point, Ms. Brault had no real choice; the entry door and framing had been removed, leaving her home open to the elements, protected only by a makeshift tarp shed. The Polli worker told her, "don't worry; it probably won't cost much more." On the strength of this assurance, and in the face of Polli's threat to walk away from the job if she refused to sign the change order, Ms. Brault reluctantly signed off.

Over the course of another week, Polli then completed the repairs—original scope plus additional work as spelled out in the change order. Ms. Brault was initially satisfied with the work, but over time, noted minor defects in the work. When she reported these to Polli, it sent workers to address

the defects at no charge, as warranty items. At least one of these fixes did not take; Ms. Brault had a friend come to install flashing over the top of the door to prevent leaking. Because of the dispute in this case, Ms. Brault has stopped asking Polli to come out and make further warranty repairs.

When Polli sent its final bill, Ms. Brault was shocked to learn that the time and materials charge for work beyond the scope of the original contract was not just a little bit more than the contract amount, but more than $8,000 more: the total bill came to $22,643.47. The granting agency paid a total of $16,400 on Ms. Brault's behalf. How the agency arrived at that figure does not appear from the evidence. Polli thus seeks to recover the balance of $6,243.47.

On these facts, the court concludes that the parties entered into two agreements: the first, as noted above, for repairs on a fixed price basis, and the second for additional work on a time and materials basis. The first of these was freely entered into by both sides and so is fully enforceable. The court cannot conclude that the later, time and materials change order is enforceable, for two related reasons. First, it is well-established in Vermont, as elsewhere, that "improper pressure during the bargaining process, i.e., duress, operates to undermine a party's manifestation of assent and thus undermines one of the foundational cores of any agreement." *Everbank v. Marini*, 2015 VT 131, ¶ 18, 200 Vt. 490. As the *Marini* Court noted, there are two kinds of "duress": "duress by physical compulsion, which renders an agreement void, and duress by improper threat, which results in an agreement that is voidable by the victim." *Id.* ¶ 22, citing Restatement (Second) of Contracts, §§ 174–76. In the latter case, "a person makes an improper threat that induces a party who has no reasonable alternative to manifesting his assent." *Id.* (quoting Restatement (Second) of Contracts, chapter 7, topic 2, intro. note). Here, the findings above make clear that Polli made an improper threat—to walk away from its contract obligations, leaving Ms. Brault's home open to the elements—that left Ms. Brault with no reasonable alternative to signing the change order. That agreement, therefore, was voidable at Ms. Brault's option.

Second, the doctrine of equitable applies here. As our Supreme Court made clear in *My Sister's Place v. City of Burlington*, "The doctrine of equitable estoppel precludes a party from asserting rights which otherwise may have existed as against another party who has in good faith changed his position in reliance upon earlier representations." 139 Vt. 602, 609 (1981).

> [T]he four elements of equitable estoppel are: "(1) (t)he party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury."

*Id.* (quoting *Town of Bennington v. Hanson-Walbridge Funeral Home, Inc.*, 139 Vt. 283, 293–94 (1981). Here, Polli's worker represented that the additional work specified in the change order probably would not cost much more. Given the substantially increased scope of work reflected in the change order, however, he had to have known that this was not likely; he also had to have known that Ms. Brault would have no reason to question his assurance. Equally, it was clearly his intent in making this assurance to induce Ms. Brault to sign the change order. And Ms. Brault clearly relied act to her detriment on this assurance; she effectively abandoned a contract that left her with little downside risk in favor of one that shifted all risk from Polli to her.

To be clear, the court cannot conclude that Polli's behavior in this regard was so unconscionable as to support a claim for violation of the Vermont Consumer Fraud Act—although Ms. Brault cannot be faulted for floating the suggestion. At the very least, however, Polli's conduct could be said to violate the covenant of good faith and fair dealing that is implied in every contract in Vermont. *See Carmichael v. Adirondack Bottled Gas Corp.*, 161 Vt. 200, 208, (1993) ("An underlying principle implied in every contract is that each party promises not to do anything to undermine or destroy the other's rights to receive the benefits of the agreement."). While the violation here may not support a separate award of damages, it also counsels against allowing Polli to profit from having taken advantage of Ms. Brault's vulnerability. *See Falcao v. Richardson*, 2024 VT 78, ¶ 78, --- Vt. --- ("[A] contract may . . . be set aside if 'the circumstances of the agreement were ... unconscionable.' ") (citation omitted); *Maglin v. Tschannerl*, 174 Vt. 39, 45–46 (2002) (in assessing unconscionability, "we are primarily concerned with unequal bargaining power when the differential is used to coerce the less powerful party into agreement because that party has no other meaningful choice").

Having concluded that the change order is unenforceable, the court is left to determine what remedies are left to the parties. Polli clearly performed work that was beyond the scope of the original contract and that was, for the most part, workmanlike. Nevertheless, the court concludes that Polli is estopped from recovering more than the "not much more" than the original contract price that Polli's worker promised her. The court notes in this regard that Ms. Brault has already paid (or, more accurately, the granting agency has paid on her behalf) more than $2,000 more than the original contract price. Weighing the equities all around, the court concludes that this amount represents a fair balance between the value of the work performed—noting the existence of defects that remain unaddressed—and the assurances made to induce Ms. Brault to agree to that work.

The court concludes, therefore, that Polli is estopped from recovering anything further on its claims. Equally, however, the equities weigh against any award of damages to Ms. Brault. The court

notes in this regard that while there continue to be minor defects that would ordinarily be subject to Polli's warranty obligations, Ms. Brault has effectively waived the warranty remedy by abandoning any efforts to enforce the warranty. The evidence makes clear that Polli has responded promptly and appropriately to all warranty requests, and stands ready to do so with respect to the remaining issues. Given Ms. Brault's loss of faith in Polli, the court concludes that the more equitable resolution to those remaining issues is to treat them as an offset against any payment obligation to Polli. As noted above, that offset is reflected in the court's determination that leaving both parties to the amount paid ($16,400) represents a fair balancing of the equities involved in the parties' competing claims.

## <u>ORDER</u>

The court grants judgment to Defendant on Plaintiff's claim in chief, and to Plaintiff on Defendant's counterclaim. As neither party has prevailed on the claims it asserted, neither is entitled to recover costs. Thus, neither party shall take anything from this suit. The short form of judgment required by V.R.C.P. 58 will issue separately.

Electronically signed pursuant to V.R.E.F. 9(d): 4/30/2025 12:02 PM

Samuel Hoar, Jr.
Superior Court Judge