## Vermont Structural Steel v. State of Vermont Department of Taxes

[569 A.2d 1066]

No. 87-473

Present: Allen, C.J., Peck, Gibson and Morse, JJ., and Barney, C.J. (Ret.), Specially Assigned

Opinion Filed November 3, 1989

*Charles T. Shea* and *Norman Williams* of *Gravel and Shea,* Burlington, for Plaintiff-Appellant.

*Jeffrey L. Amestoy,* Attorney General, and *Jacqueline A. Hughes,* Assistant Attorney General, Montpelier, for Defendant-Appellee.

**Peck, J.** Vermont Structural Steel Corporation (taxpayer) appeals from a sales and use tax assessment of $33,708.95 for the period September 1, 1980, through October 31, 1983. In prior review, the Commissioner of Taxes and the superior court both upheld the assessment. We affirm.

Taxpayer manufactures fabricated steel in the form of steel girders and other steel construction products from raw steel. It sells the fabricated steel to contractors at retail, collecting a sales tax from the contractor on the full retail price. Taxpayer is not required to pay a sales tax when it purchases the raw steel from which it manufactures beams and girders for retail sale, since it collects a sales tax when it sells the product. See 32 V.S.A. § 9745.

However, taxpayer also does business as a construction con-tractor from time to time, using products it fabricates for its construction projects. It pays a sales tax on the purchase of the raw materials used to produce the fabricated products used on these contracts. The Department contends that taxpayer should have paid a compensating use tax on the full retail value of these products which the Department argues taxpayer in effect "sells to itself," and assessed a deficiency on that basis for the years 1980 through 1983, based on 32 V.S.A. § 9773(2).* Taxpayer appealed to the Commissioner, who upheld the assessment. The taxpayer then appealed to the Chittenden Superior Court pursuant to 32 V.S.A. § 9817 and V.R.C.P. 74. The superior court also upheld the assessment, and the present appeal followed.

## I.

Taxpayer first contends that the Department is estopped to assess the tax retroactively after giving taxpayer the advice on which the latter relied during the three years at issue. After Vermont adopted a sales tax in 1969 taxpayer claimed that it sought advice from the Department and was told that it was only required to pay a tax at the time of purchase on steel beams which it intended to fabricate and erect under construction contracts. At trial the case for estoppel was based on the testimony of taxpayer's vice-president, John McDonald, and an affidavit of James Kendall, who had been chief of audits for the Department from 1962 to 1975. McDonald testified that a Department representative visited the plant and advised the company to collect a sales tax when it sold fabricated steel at retail, but to pay a sales tax only on the raw steel that it purchased

---

* 32 V.S.A. § 9773(2) states as follows:
 § 9773. Imposition of compensating use tax

 Unless property has already been or will be subject to the sales tax under this chapter, there is imposed on every person a use tax at the rate of four percent for the use within this state, except as otherwise exempted under this chapter:

 . . . .

 (2) Of any tangible personal property manufactured, processed or assembled by the user, if items of the same kind of tangible personal property are offered for sale by him in the regular course of business . . . .

when acting in a dual capacity as a fabricator and construction contractor. Kendall submitted an affidavit after the Department hearing, which was considered by the Commissioner in his decision, that:

> to the best of my knowledge and belief, at all times while I was Chief of the Audits Division for the Vermont Tax Department, the Tax Department would not have levied a sales tax on transactions in which Vermont Structural Steel agreed to furnish materials *and* labor to erect a steel structure at a construction site for one fixed sum. However, the Department would have imposed [sales tax] on transactions in which Vermont Structural Steel agreed to furnish fabricated steel *only*.

(Emphasis in original.)

The Department does not dispute that one of its employees visited taxpayer's plant prior to the effective date of the sales and use tax, but responds that taxpayer's evidence as to what was said was vague and unverified, since McDonald did not remember who had visited the plant and did not obtain advice in writing. Moreover, McDonald testified that he had been aware of a controversy between the steel industry and the State of New York over a similar tax issue, and after meeting with the Vermont Tax Department representative "came away with the assumption that the tax was being applied the same way that it was applied in New York State and I guess some others."

## A.

Taxpayer first asserts that the truth of McDonald's version of the meeting must be regarded as established because his testimony was unrebutted. The argument misapprehends the nature of the evidence and the proper role of the trier of fact. This Court has stated that "where a credible witness testifies distinctly and positively to a fact and is not contradicted, and there is no circumstance shown from which an inference against the fact testified to can be drawn, the fact may be taken as established, and a verdict directed on such evidence." *Neill v. Ward*, 103 Vt. 117, 160, 153 A. 219, 238 (1930).

The *Neill* rule appears to support taxpayer's position, but its implications deserve reappraisal in light of the case law in Vermont since 1930 dealing with the relationship of triers of fact and appellate courts. *Neill* suggested that if a party introduced evidence that was uncontroverted and dispositive, that party was entitled to a verdict as a matter of law, save only for the "circumstance shown" under which the court would retain the power to withhold entering judgment as a matter of law. The problem with applying the *Neill* rule usefully is that the nature of the countervailing "circumstances" negating the rule has never been made clear. We cited *Neill* as recently as our decision in *In re New England Telephone & Telegraph Co.*, 135 Vt. 527, 535, 382 A.2d 826, 832 (1977). In that case we indicated in *dictum* that the Public Service Board should on remand "indicate the circumstances, if any, that discredit any *factual* testimony" to be offered on remand by a certain witness, whose prior testimony the board had rejected, though it had been uncontroverted. *Id.* at 535, 382 A.2d at 832 (emphasis in original). While the holding in *Neill* could be read as a substantive principle of law entitling a party introducing uncontroverted evidence the right to judgment, the dictum in *In re New England Telephone & Telegraph Co.* was simply directed at obtaining reasoned findings from the trier of facts.

■ More important, the *Neill* holding is at odds with the strong and often cited rubric that, to be set aside, findings must be shown to be clearly erroneous. See, e.g., *A. Brown, Inc. v. Vermont Justin Corp.*, 148 Vt. 192, 194, 531 A.2d 899, 901 (1987). The rule is not a single, clear, guiding principle, but a patchwork of loosely related concepts applied differently in different contexts. Therefore, it is properly limited to those rare instances where the testimony concerns uncontroverted direct evidence, where rejection of that evidence by the trier appears arbitrary and unreasonable, and where no explanation of the rejection is provided or apparent. To the extent that *Neill v. Ward* holds to the contrary, it is overruled.

B.

■ Witness McDonald's testimony was entitled to whatever

weight the court saw fit to accord it, as the question was not one based on uncontroverted direct evidence. Even if McDonald correctly recalled the conversation with the unidentified representative of the Department, what the representative said did not bind the Department and was not a sound basis for reliance by taxpayer. See *In re Agency of Administration*, 141 Vt. 68, 80–81, 444 A.2d 1349, 1355 (1982).

 Equitable estoppel may be asserted against a governmental body. *My Sister's Place v. City of Burlington*, 139 Vt. 602, 433 A.2d 275 (1981), set forth the four elements of estoppel:

> "(1)[t]he party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury."

*Id.* at 609, 433 A.2d at 280 (quoting *Town of Bennington v. Hanson-Walbridge Funeral Home, Inc.*, 139 Vt. 288, 293–94, 427 A.2d 365, 369 (1981)). It was taxpayer's burden to establish all of the elements of estoppel, particularly where estoppel was directed at a government agency. *Heckler v. Community Health Services*, 467 U.S. 51, 65 (1984). Taxpayer seeks to distinguish *Heckler* because in that case a fiscal intermediary for the federal government gave incorrect advice, while in the present case the Department itself imposed a "retroactive change in position." Here, the sole evidence for the "retroactive change in position" was the Kendall affidavit, which did not counterbalance the overwhelming case against estoppel. The trial court's view that taxpayer simply showed "that for a period of time the Tax Department did not enforce the sales tax statute to its full extent" is more consistent with the tenor of the Kendall affidavit than are the broader conclusions inferred by taxpayer about the Tax Department's official interpretation of the statute.

 Taxpayer argues incorrectly that the Department should be estopped because the advice from its representative was in fact the Department's position during the years in ques-

tion. The estoppel issue is distinct from the question of what stance the Department actually took in interpreting 32 V.S.A. § 9773(2). Whether or not the representation of a government agent reflects accurately the state of the law at the time made, that representation can provide the basis for estoppel. See *Interstate Fire Insurance Co. v. United States*, 215 F. Supp. 586, 599 (E.D. Tenn. 1963), *aff'd*, 339 F.2d 603 (6th Cir. 1964); *Lesavoy Foundation v. Commissioner*, 238 F.2d 589, 592–93 (3d Cir. 1956). On the other hand, in the absence of grounds for estoppel, the advice or opinion given by a government agency, though incorrect, does not bar later correction, even if there had been reliance on the government agent's statement. *Automobile Club of Michigan v. Commissioner*, 353 U.S. 180, 183 (1957). In the present case, taxpayer has not demonstrated that the State first established, and later altered, its position on the statute.

## C.

 Taxpayer vigorously defends the credibility of its chief witness, but credibility was not the issue. McDonald, at most, could testify as to his impression of what the Department representative said. The testimony falls far short of establishing that this meeting proved that the Department "knew the facts"—that the Department knew taxpayer's intention to pay a sales tax only on the cost of raw steel which it purchased, fabricated, and then used as girders on its own construction projects, while withholding the correct interpretation of the new statute.

 Even if taxpayer's version of what the Department representative said was correct, the reliance asserted to support estoppel must be reasonable. *My Sister's Place v. City of Burlington*, 139 Vt. at 609, 433 A.2d at 279–80. Here, reliance on an informal oral opinion as the basis for permanent and far-reaching business and tax planning was unreasonable. The United States Supreme Court said in *Heckler*:

> It is not merely the possibility of fraud that undermines our confidence in the reliability of official action that is not confirmed or evidenced by a written instrument. Written ad-

vice, like a written judicial opinion, requires its author to reflect about the nature of the advice that is given to the citizen, and subjects that advice to the possibility of review, criticism, and reexamination.

467 U.S. at 65. Tax statutes and regulations are detailed and often complex. No rational scheme of taxation could possibly survive challenges based on parol accounts of talks with tax officials, and it is best to rely on those statements and understandings reduced to writing in settling tax disputes between taxing authorities and taxpayers. The trial court correctly focused on the flaws in taxpayer's estoppel argument—the weakness of its evidence and the lack of precedent for allowing a taxpayer to rely on an oral opinion to estop a taxing authority to impose a tax otherwise authorized by law. Its ruling on estoppel was without error.

## II.

 Taxpayer argues that the Department's interpretation of the use tax was an abuse of agency discretion because administrative agencies may not change their practices or interpretations retroactively where such a change leads to harsh results. The argument is based on the initial establishment of the past practice or interpretation, which taxpayer has not conclusively shown. There is scant evidence as to what the Department's prior position was on the interpretation of the use tax statute, and the trial court found, albeit in connection with the estoppel issue, that taxpayer's evidence simply showed that the Department "did not enforce the sales tax statute to its full extent." Taxpayer points out in its brief that the current Department procedure for obtaining a formal written ruling (Department Rules of Practice, Rule 7.b) was only instituted in 1982. Taxpayer does not argue that there was no way to obtain the written position of the Department of the State of Vermont on a tax issue prior to 1982, simply that the formal ruling procedure was begun in that year. Had taxpayer been rebuffed in such attempt, its present posture might be different. The trial court decided that the Department had not taken a definite position on this issue, and that taxpayer chose to take the position most

favorable to it, without attempting to put the Department on the record. This decision fully answered taxpayer's contention that the agency abused its discretion in applying a "new interpretation" retroactively.

## III.

Taxpayer next contends that the Department's interpretation of the Vermont use tax statute to impose a use tax under the circumstances lacks a sound basis in law.

### A.

 Taxpayer contends that the result of the Department's interpretation is to tax real property, while the sales and use tax scheme is clearly aimed at personal property only. This argument bypasses one of the most critical guiding principles in statutory interpretation, the plain meaning rule. The meaning of § 9773(2) is plain. The statute states that a taxpayer manufacturing, processing, or assembling personal property is taxed on the use of that property "if items of the same kind of tangible personal property are offered for sale by him in the regular course of business . . . ." 32 V.S.A. § 9773(2). As we stated in *Lubinsky v. Fair Haven Zoning Board*, 148 Vt. 47, 49, 527 A.2d 227, 228 (1986):

> The first recourse in applying a statute is to examine the plain meaning of the language used in light of the statute's legislative purpose and in terms of its impact on the factual circumstances under consideration. If that plain language resolves the conflict without doing violence to the legislative scheme, there is no need to go further, always bearing in mind that the paramount function of the court is to give effect to the legislative intent.

Viewing the present statute "from the entire enactment, its reason, purpose and consequences," *id.* at 50, 527 A.2d at 228, we cannot say, as a matter of statutory interpretation, that the trial court erred in concluding that the use tax was applied properly.

### B.

 Taxpayer argues that it does not "use" steel which it

erects for others within the meaning of the compensating use tax statute. It distinguishes the "use" of personal property in *International Business Machines Corp. v. Department of Taxes*, 133 Vt. 269, 336 A.2d 158 (1975), where taxpayer removed computers from inventory, in effect "buying from itself" without paying a sales tax. Taxpayer in that case was subject to a use tax because it was the end user of its own computers, while in the present case the taxpayer's construction customer is the end user. The distinction is not a critical one under the statute's definition of "use" in 32 V.S.A. § 9701(13):

> (13) Use: means the exercise of any right or power over tangible personal property by the purchaser thereof and includes, but is not limited to, the receiving, storage or any keeping or retention for any length of time, withdrawal from storage, any installation, any affixation to real or personal property, or any consumption of that property.

The definition makes clear that the "use" in *International Business Machines* was an example, but not an exclusive example, of the kinds of uses that will subject the user to a tax under § 9773(2). In that case taxpayer exercised rights to and power over the computers that it withdrew from inventory, making it clear that the computers were not thereafter further sold or conveyed. Taxpayer's argument implies that there is no "use" under § 9773(2) unless the taxable item comes to a state of final repose with the user. That limitation is not stated or implied in the statutory definition. Here, the fabricated items were not themselves sold at retail, but were "install[ed]" and "affix[ed] to real . . . property" by taxpayer in the course of a contract where only the product of the construction, which integrated services and materials into a completed whole, could fairly be said to have been "sold."

## C.

Taxpayer also argues that § 9701(13) does not apply unless the taxpayer is the "purchaser" of the tangible personal property, and that the taxpayer is no more the "purchaser" of the fabricated steel products it uses in construction than a carpenter is the "purchaser" of the door and windows he makes

and installs in a house. To assert that taxpayer is not a "purchaser" is to reargue the meaning of 32 V.S.A. § 9773(2). That section denominates certain users of tangible personal property—those who are also sellers of the property—as "purchasers" for use tax purposes. Taxpayer relies on *Katz v. Johnson*, 220 A.2d 495 (Me. 1966), which has been overruled, and does not support taxpayer's position.

## IV.

Finally taxpayer contends that, as applied by the Department, the tax statute in question violates the equal protection clauses of the federal and Vermont Constitutions. Taxpayer argues that *contractors* who also happen to sell fabricated steel at retail are at a disadvantage compared to those who fabricate parts but who use all of what they fabricate in construction projects, because the latter will pay only the sales tax on the purchase of raw materials, not on the finished items fabricated from the raw materials. The State responds that the purpose of the statute is, first, to treat all *manufacturers* equally and to avoid favoring manufacturers who are also contractors over those who only sell at retail; and, second, to treat *contractors* equally, whether they fabricate parts themselves or purchase them at retail.

The merits of a claim of discrimination depend on the focus of analysis. When the focus of the equal protection analysis is *contractors who fabricate parts*, then the statute appears to discriminate against those who also sell some of those parts at retail and for those who use all of their production in their own projects, as here. The State contends that contractors who fabricate and sell some of their production at retail are not disadvantaged compared to contractors who fabricate and use all of their output in construction projects. This analysis is short-sighted. Some discrimination does result from Department's application of § 9773(2), but such considerations are for the Legislature to ponder, not the courts. Taxpayer cannot complain of mere asymmetry in taxation where its own claim of discrimination cannot be cured without creating discrimination based on other classifications. It must go further and demon-

strate want of any rational purpose for the tax in question. As we stated in *Andrews v. Lathrop*:

> The Equal Protection Clause, recognizing that no scheme of taxation has yet been devised which is free of all discriminatory impact, "imposes no iron rule of equality, prohibiting the flexibility and variety that are appropriate to reasonable schemes of state taxation." *Allied Stores of Ohio* v. *Bowers*, 358 U.S. 522, 526 (1958).
>
> . . . .
>
> . . . Thus, if any reasonable policy or purpose for the legislative classification may be conceived of, the enactment will be upheld.

132 Vt. 256, 259, 315 A.2d 860, 862 (1974). The only examples of discrimination in taxation offered by taxpayer involve cases where either a fundamental right is involved, or cases involving a suspect classification. *Bagley v. Vermont Department of Taxes*, 146 Vt. 120, 500 A.2d 223 (1985) (invalidating the durational residency aspect of the renewable solar energy tax credit statute).

The classification here is not based on nontax considerations like residency or domicile, but substantive tax considerations— whether a contractor who builds and installs fabricated steel parts in a construction project, but does not sell such products at retail, is favored unduly over a contractor who builds and installs such parts in construction projects and who *also* sells such products at retail. Such considerations are well within the norm for tax statutes. See *Morse Signal Devices of California, Inc. v. County of Los Angeles*, 161 Cal. App. 3d 570, 581–82, 207 Cal. Rptr. 742, 750 (1984) (assessment against installer for security alarm systems was not arbitrary and discriminatory even though virtually identical fire alarm systems were instead assessed as part of subscribers' real property); *Measurex Systems, Inc. v. State Tax Assessor*, 490 A.2d 1192, 1195 (Me. 1985) (disparate use taxation between manufacturers-lessors and suppliers-lessors not violative of state equal protection); *Shell Oil Co. v. New York State Tax Commission*, 91 A.D.2d 81, 90, 458 N.Y.S.2d 938, 944, *motion denied, Mobil Oil Corp. v. Tully*, 60 N.Y.2d 632, 454 N.E.2d 938, 467 N.Y.S.2d 355 (1983) (state's

application of [franchise] tax to sales of nonpetroleum products of oil companies, while not taxing similar sales by their nonoil company competitors, not constitutionally suspect).

In the present case the Legislature chose a path to serve the twin goals of revenue and fair treatment among classes of taxpayers. The classification established is well within the norms established under our cases and those elsewhere. We do not, and need not, decide that the Legislature's scheme to achieve these ends was the best one possible, but simply that the scheme was rational. The trial court did not err in concluding that the statute met this test.

*Affirmed.*