NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2021 VT 46

No. 2020-220

| | |
|---|---|
| John Moyers | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Addison Unit, |
| | Civil Division |
| | |
| Sheun Lai Poon and Brenda Lee Poon | April Term, 2021 |

Alison S. Arms, J.

Andrew Jackson, Bristol, for Plaintiff-Appellant.

Elizabeth M. Demas and Peter L. Potts of Clarke Demas & Baker, PLLC, Burlington, for
  Defendants-Appellees.

PRESENT: Reiber, C.J., Robinson, Eaton, Carroll and Cohen, JJ.

¶ 1.    **EATON, J.**  Plaintiff appeals from the trial court's decision in this long-running property dispute. He raises numerous arguments. We reverse and remand the court's dismissal of plaintiff's claim for contribution under 19 V.S.A. § 2702 and affirm the remainder of the court's decision.

¶ 2.    Defendants own a building on a lot at 17 Main Street in Bristol, Vermont. They have fenced in a small parcel behind their building, which they use to store materials in service of their building. Plaintiff claims to own a driveway that runs to the rear of defendants' building, which defendants use for deliveries, as well as a parking lot behind defendants' building where the small fenced-in parcel is located.

## I. Prior Litigation

¶ 3.    This is the parties' third time before this Court.  See Moyers v. Poon, 2018 VT 27, 185 A.3d 586, 207 Vt. 37 [Poon II]; Moyers v. Poon, No. 2016-432, 2017 WL 2963438 (Vt. June 26, 2017) (unpub. mem.), https://www.vermontjudiciary.org/sites/default/files/documents/ eo16-432_0.pdf [https://perma.cc/A9NB-BWYM] [Poon I].  Plaintiff initially sued defendants in 2014, claiming title to the "driveway along the side of defendants' commercial building" and the small parcel referenced above.  Poon I, 2017 WL 2963438, at *1 n.1.  Plaintiff alleged that defendants were trespassing by using "the driveway . . . for deliveries and also stor[ing] fuel tanks and waste containers on [his] land."  Id. at *1.  He also sought contribution from defendants for his costs in maintaining the driveway.  Defendants counterclaimed, arguing that they had "a right to use the driveway and land behind their building for parking, access, delivery, storage, and other related commercial purposes" by virtue of a prescriptive easement for the driveway and through adverse possession with respect to the small parcel.  Id.

¶ 4.    Plaintiff later asserted as a matter of undisputed fact that defendants had a deeded right-of-access.    The trial court "granted summary judgment to plaintiff on defendants' counterclaims for adverse possession and prescriptive easement, reserving judgment on the extent of any deeded right to access."  Id. at *2.  Plaintiff then moved to dismiss his claims for damages for trespass and contribution for driveway-maintenance costs without prejudice; defendants sought relief from judgment, asserting that they did not in fact have a deeded right-of-access.  The court granted plaintiff's request and denied defendants' motion.  It explained that a right-of-access was immaterial to its decision on defendants' counterclaims, which had failed for lack of proof.  Ultimately, the court found that plaintiff had made a binding admission on the right-of-access issue and the source of that right was immaterial.  It entered final judgment allowing defendants a "right of access for deliveries," but enjoining defendants "from any use of [p]laintiff's property other than for access for deliveries."  Id. (quotation marks omitted).

¶ 5. On appeal, this Court affirmed the treatment of defendants' counterclaims but struck the grant of injunctive relief, finding it unwarranted in the absence of a trespass finding. We explained that "the court's summary judgment order was limited to defendants' claims of a prescriptive easement and adverse possession" and it "did not resolve plaintiff's claim of trespass," which required plaintiff "to show that defendants had intentionally entered or remained upon land in the possession of another without a privilege to do so." Id. at *6 (quotation omitted) (alteration omitted). The rejection of defendants' counterclaims, we explained, "did not amount to a showing that defendants had engaged in a continuous trespass or threat of continuous trespass." Id.

¶ 6. In Poon II, we determined that the trial court could not hold additional hearings on plaintiff's 2014 complaint because the case had not been remanded. 2018 VT 27, ¶ 10. We found that the doctrine of res judicata barred plaintiff from relitigating "an alleged trespass by [defendants] that was or could have been litigated" in the 2014 action. Id. ¶ 11. But, we explained, a "future claim seeking injunctive relief against an ongoing trespass, or the threat of one, would not be barred, nor would claims for damages for injuries which occurred after the previous case." Id. ¶ 12.

## II. Current Suit

¶ 7. In May 2018, plaintiff filed the complaint at issue here. He claimed to own the property south of defendants' property line, and he argued that defendants were trespassing by storing items on his land. Plaintiff asserted that defendants knew that he wanted the items removed and, by refusing to do so, they were depriving him of the possession and use of his property. Plaintiff also asserted that defendants benefited from his ownership and maintenance of the driveway and they were required by 19 V.S.A. § 2702 to contribute rateably to his maintenance costs. Finally, plaintiff sought punitive damages based on his allegation that defendants were acting in bad faith.

¶ 8. Following a bench trial, the court concluded that while plaintiff proved that defendants did not own the disputed area, he failed to prove that he owned it. The court acknowledged that plaintiff's evidence regarding his ownership was uncontradicted but, for the reasons set forth below, it found plaintiff's evidence insufficient to meet his burden of proof. The court noted that neither party asked the court to quiet title.

¶ 9. The court credited the testimony of plaintiff's expert land surveyor, Donald Johnston, regarding defendants' southerly property line at 17 Main Street. The court discussed in detail how the land surveyor had supported his opinion by tracing the chain of title to the lands currently held by defendants and others in the vicinity of the disputed parcel. It found that various deeds established that the southernmost possible boundary of defendants' property was 64 feet, 7 inches, which was equidistant to the depth of the adjoining parcels on both sides and was essentially contiguous to the back wall of defendant's building.

¶ 10. The court contrasted this approach with the evidence plaintiff presented to support his claim of ownership. It found that plaintiff abandoned his careful chain-of-title proof after 1924. He did not establish the chain of title to the building he now owned, nor whether the boundaries of his lot were altered through subsequent conveyances. The court found that the boundaries of a third property at 11 Main Street might encompass the disputed area and noted that vague reference had been made throughout the hearing to plaintiff's ownership of 11 Main Street subsequent to prior owners known as Mack and Harmon.[1] But the chain of title to 11 Main Street to plaintiff was not proved at the hearing, nor did the evidence establish whether the boundaries of the 11 Main Street lot were altered through subsequent conveyances through the present.

¶ 11. The land surveyor opined that plaintiff owned the land south of defendants' boundary line (presumably including the disputed parcel) because there was a deed for the purchase of that land wherein Mack and Harmon sold the property to a limited liability company

---

[1] The court erroneously referred to this property as "13 Main Street" in its decision.

4

(LLC) controlled by plaintiff. Yet, the expert also testified that there were two possible boundary lines that established the boundary of the Mack and Harmon (now presumably plaintiff's land) to the south of defendants' property.

¶ 12. The land surveyor nonetheless testified that plaintiff owned all of the land behind a bank at 15 Main Street and behind defendants' lot at 17 Main Street and that there was a deed reflecting this conveyance. Yet plaintiff did not submit that critical deed at trial. Thus, while the court found the land surveyor to be credible, it rejected his conclusion on this point as unsupported by other evidence. It found that neither the deed itself nor the details of the deed were described. In essence, the basis of his expert opinion was not established. The court also could not reconcile Mr. Johnston's conclusion with his testimony that he could not determine the relevant boundary line of the Mack and Harmon property.

¶ 13. The court was unpersuaded by a quitclaim deed that plaintiff submitted reflecting a quitclaim of the property from an LLC owned by plaintiff to plaintiff personally. In the deed, plaintiff asserted that: (1) his LLC quitclaimed property to him; and (2) the property had been transferred to the LLC from Mack and Harmon by a deed that was referenced but not produced at trial and which purported to encompass the 11 Main Street property. As indicated above, the court found that the dimensions of 11 Main Street as of 2019 were not proved at trial, nor was it proved that plaintiff owned 11 Main Street. Thus, the court concluded, the scope of the property quitclaimed in the submitted deed was not established at trial.

¶ 14. The court found that the three pieces of evidence asserting that plaintiff owned the disputed parcel originated from plaintiff and plaintiff essentially asked the court to accept his word without more. Without evidence of his chain of title, as plaintiff's expert had shown he could do, the court deemed plaintiff's self-serving assertions insufficient to support the conclusion that plaintiff was the record owner of the disputed area.

5

¶ 15. The court also considered plaintiff's other arguments in support of his ownership claim. It explained that the parties had disputed ownership and use of the fenced-in parcel for years. At one point, one defendant agreed to hold plaintiff harmless from liability that would arise from defendants' use of the parcel. Plaintiff argued that, by signing an agreement to this effect, this defendant admitted that plaintiff owned the disputed area. Defendants also purchased liability insurance to cover the area. Plaintiff believed that his ownership of this property was settled in 2014 based on defendants' answer to his first complaint. Plaintiff also cited this Court's 2016 decision, which affirmed that defendants had acquired no right to the property through adverse possession or a prescriptive easement.

¶ 16. The court rejected these arguments. It found that one defendant's admission that plaintiff owned the parcel in his hold-harmless agreement and defendants' answer to plaintiff's first complaint in 2014 did not establish that plaintiff was the title owner to the lands south of defendants' lot. It emphasized that, in their 2014 answer, defendants expressly stated that they "[did] not acknowledge that the premises belong to plaintiff." At most, the court concluded, the admission and answer might establish that defendants acknowledged that they did not hold a superior interest in the land with respect to plaintiff. As for proof of ownership of the disputed parcel, the court reiterated that plaintiff did not meet his burden upon the evidence presented at the hearing. Because plaintiff failed to show that he owned the disputed parcel, the court concluded that he could not prevail on his trespass, contribution, and bad-faith claims.

¶ 17. Plaintiff moved for reconsideration and for a new trial. He argued that the court should have found that he met his burden of proof because "the only evidence put before the court was that [he] own[ed] the property subject to this action" and the court had found his expert credible. He also asserted that the court misconstrued the import of his quitclaim deed. Finally, he argued that the court failed to consider the entirety of defendants' answer in the 2014 case and it failed to give appropriate weight to one defendant's agreement with plaintiff in 2004, which

stated that defendants' propane tank (or dumpster) were on plaintiff's property. Plaintiff also contested the court's discounting of his testimony as self-serving. Alternatively, he asked for a new trial because the court's recording system failed for a brief portion of Mr. Johnston's testimony. Essentially, plaintiff raised the same arguments that he now raises in this appeal.

¶ 18. The court denied his motion. It noted that plaintiff did not seek to reopen the evidence. It rejected plaintiff's assertion that it acted illogically in concluding that plaintiff failed to meet his burden of proof. It reiterated that proof of plaintiff's ownership of the disputed parcel was central to his claim and that it considered fatal plaintiff's decision not to introduce the deed that purportedly established his ownership. It also noted that plaintiff's expert did not testify that he based his opinion on viewing the deed to the parcel, but only that he understood that there was such a deed and that plaintiff asserted that he owned the parking lot in which the parcel was located. As to plaintiff's testimony, the court explained that while a property owner was "a competent witness to testify to the value" of his property, citing 12 V.S.A. § 1604, that statute did not provide for a property owner to prove ownership through his testimony alone. Plaintiff's repeated assertions that he owned the property, through both his own testimony and the testimony of his expert, had not convinced the court that the assertion was true. Its finding that defendants did not own the parcel did not establish that plaintiff owned it.

¶ 19. The court also rejected plaintiff's request for a new trial based on the faulty recording system. Its decision on this point is discussed in greater detail below. This appeal followed.

III. Arguments on Appeal

¶ 20. Plaintiff first argues that the court was obligated to find that he owned the disputed parcel because his evidence on this point was uncontradicted. He cites Vermont Structural Steel v. Department of Taxes in support of this assertion. 153 Vt. 67, 569 A.2d 1066 (1989). Plaintiff points to the evidence he presented below, including the agreement that one defendant signed, the

7

fact that defendants raised an adverse-possession counterclaim against him in 2014, defendants' answer to the 2014 complaint, plaintiff's quitclaim deed, his own testimony, and the testimony of his expert. He also contends that the trial court agreed that he had "maintained, policed and exerted control over the premises." He appears to suggest that defendants should have offered evidence to show that he did not own the land in question. Plaintiff questions how the court could have been unpersuaded by his evidence and labels its decision arbitrary. Plaintiff also argues that this Court described him as an "adjoining landowner" in its 2017 decision and thus, it follows that he must own the land south of defendants' property under the doctrine of res judicata. For this proposition, plaintiff appears to rely on the first sentence of the Court's 2017 decision, summarizing the case before the Court. See Poon I, 2017 WL 2963438, at *1 ("In this dispute between adjoining landowners over the rights to a driveway, the trial court granted partial summary judgment in plaintiff's favor . . . .").

¶ 21. Our "review of a trial court's findings following a bench trial is limited." Lofts Essex, LLC v. Strategis Floor & Decor Inc., 2019 VT 82, ¶ 17, 211 Vt. 204, 224 A.3d 116 (quotation omitted) (alteration omitted). The court's findings will stand "unless clearly erroneous when viewed in the light most favorable to the prevailing party." Id. (quotation omitted). That means "an appellant must show there is no credible evidence to support the finding," not just that the finding "is contradicted by substantial evidence." Id. (quotation omitted). We leave it to the trial court, as factfinder, to determine "the credibility of witnesses and the persuasive effect of the evidence." Id. (quotation omitted) (alteration omitted). The court's conclusions will stand "where they are reasonably drawn from the evidence presented." Id. (quotation omitted).

¶ 22. In Vermont Structural Steel, we rejected the argument that the trial court must accept unrebutted testimony as true, finding that this "argument misapprehend[ed] the nature of the evidence and the proper role of the trier of fact." 153 Vt. at 71, 569 A.2d at 1068. We discussed the so-called "Neill rule," which held that " 'where a credible witness testifies distinctly and

8

positively to a fact, and is not contradicted, and there is no circumstance shown from which an inference against the fact testified to can be drawn, the fact may be taken as established, and a verdict directed on such evidence.' " Id. (quoting Neill v. Ward, 103 Vt. 117, 160, 153 A. 219, 238 (1930)). We found "the Neill holding . . . at odds with the strong and often cited rubric that, to be set aside, findings must be shown to be clearly erroneous," and we limited its application "to those rare instances where the testimony concerns uncontroverted direct evidence, where rejection of that evidence by the trier appears arbitrary and unreasonable, and where no explanation of the rejection is provided or apparent." Id.

¶ 23.     This is not one of those "rare instances" referenced in Vermont Structural Steel. As set forth above, the court explained in detail why it rejected plaintiff's uncontroverted evidence. It considered and rejected plaintiff's claims of an admission in a 2004 agreement, his argument based on the purchase of liability insurance, and his assertion of an admission in the prior proceedings through defendants' answer and assertion of counterclaims; it explained why it found plaintiff's testimony, his expert's testimony, and the quitclaim deed unpersuasive.

¶ 24.     With respect to defendants' counterclaims in 2014, we have previously stated that "[w]hile asserting that they had prescriptive or adverse possession rights, [defendants] did not acknowledge that [plaintiff] was the titled owner of the property." Poon II, 2018 VT 27, ¶ 2. To establish plaintiff's ownership interest, the court considered the deed from Mack and Harmon to the LLC critical and it acted within its discretion in so concluding. The court was not required to find all deeds critical, or require the submission of all deeds, before it could reach this conclusion, as plaintiff appears to suggest.

¶ 25.     While plaintiff contends that the quitclaim deed should have eliminated any uncertainty about who owned the land south of defendants' property, the court concluded otherwise, and it provided reasoned grounds for its decision. Plaintiff refers to another deed to the "Mill" property that he acquired, but that deed similarly was not introduced into evidence. As

9

noted above, the court found that plaintiff failed to establish the chain of title to the building he now owned and that he failed to show whether the boundaries of his lot were altered through subsequent conveyances. We also note that plaintiff bore the burden of proof and we reject his suggestion that defendants should have "disproved" his asserted ownership or that they were required to object to the absence of a critical deed.

¶ 26. While plaintiff disagrees with the court's reasoning and conclusions, he cannot meet the standard enunciated in Vermont Structural Steel. Essentially, plaintiff simply disagrees with the court's assessment of the evidence. The trial court twice considered and rejected his arguments, both in its final judgment order and on reconsideration. Plaintiff has not shown that the court's findings are clearly erroneous, and we do not reweigh the evidence on appeal.

¶ 27. We are equally unpersuaded by plaintiff's res judicata argument, which appears to be raised for the first time on appeal. "Res judicata bars the litigation of a claim or defense if there exists a final judgment in former litigation in which the parties, subject matter and causes of action are identical or substantially identical." Poon II, 2018 VT 27, ¶ 11 (quotation omitted). The extent of the parties' respective property interests was not finally decided in Poon I beyond affirming that defendants had a right-of-access for deliveries based on plaintiff's binding admission to this effect (and not based on a prescriptive easement) and that defendants had not acquired title to the disputed parcel via adverse possession. See Poon I, 2017 WL 2963438, at *6 (explaining that "[t]he court's summary judgment order was limited to defendants' claims of a prescriptive easement and adverse possession" and it "did not resolve plaintiff's claim of trespass"). Our reference in Poon I to the parties as "adjoining landowners" does not establish for res judicata purposes that plaintiff owned the disputed area. See id. at *1. The bench trial in this case was devoted to the precise question of whether plaintiff owned the land abutting defendants' southerly property line, and we have upheld the court's conclusion that he failed to meet his burden of proof on this point.

¶ 28.    We next consider plaintiff's assertion that the court erred in rejecting his trespass claim.  According to plaintiff, he did not need to prove title ownership to prevail but only that he possessed the disputed parcel.  He contends that he exerted control over the disputed parcel and that defendants and the court acknowledged his right to control the property.

¶ 29.    We agree that plaintiff did not need to establish his ownership of the disputed parcel to prevail on his trespass claim.  He did need to prove possession, however, and he failed to do so. The court therefore did not err in rejecting this claim.

¶ 30.    "A person who intentionally enters or remains upon land in the possession of another without a privilege to do so is subject to liability for trespass."  Harris v. Carbonneau, 165 Vt. 433, 437, 685 A.2d 296, 299 (1996) (citing Restatement (Second) of Torts § 158 (1965)).  The Restatement provides:

> [A] person who is in possession of land includes only one who
>
>   (a) is in occupancy of land with intent to control it, or
>
>   (b) has been but no longer is in occupancy of land with intent to control it, if, after he has ceased his occupancy without abandoning the land, no other person has obtained possession as stated in Clause (a), or
>
>   (c) has the right as against all persons to immediate occupancy of land, if no other person is in possession as stated in Clauses (a) and (b).

Restatement (Second) of Torts § 157 (1965); see also State v. Gillard, 2013 VT 108, ¶ 17, 195 Vt. 259, 88 A.3d 389 (stating in unlawful-trespass case that "[p]ossession . . . is the physical or constructive control of property"); Lyon v. Parker Young Co., 96 Vt. 361, 363-64, 119 A. 881, 881-82 (1923) (holding that "possession" for adverse-possession purposes was established by enclosing land with wire fence, maintaining and tapping trees, and pasturing land); Possession, Black's Law Dictionary (11th ed. 2019) (defining "possession" as "[t]he fact of having or holding property in one's power . . . [t]he right under which one may exercise control over something").

11

¶ 31. Plaintiff cannot establish possession here, and the court made no such finding. It is evident that defendants possess the disputed parcel. They use it to store materials in service of their building. They have occupied it with the intent to control it. The court discussed plaintiff's attempts to exercise control over defendants' use of the disputed parcel, which clearly failed and led to this suit. Indeed, plaintiff alleged in his own complaint that defendants had deprived him of possession, apparently based on his claim of ownership. The court did not err in dismissing plaintiff's trespass claim.

¶ 32. Plaintiff next argues that the court erred in requiring proof of ownership to sustain his claim seeking contribution from defendants for his road-maintenance costs. It is not clear if plaintiff's claim is limited to defendants' use of the driveway or the use of other property or both, but the statute on which he relies applies only to maintenance costs associated with the shared use of a "private road." In his complaint, plaintiff framed his claim as seeking contribution under 19 V.S.A. § 2702 for defendants' use of a "private driveway" that plaintiff allegedly owned and maintained. Plaintiff contends that without his "continuing maintenance and snow removal efforts, [defendants] would not have been able to receive deliveries." He cites 19 V.S.A. § 2702, which codifies longstanding equitable principles based on considerations of unjust enrichment, and he argues that the statute's plain language does not require proof of ownership.

¶ 33. Section 2702 provides that:

> In the absence of an express agreement or requirement governing maintenance of a private road, when more than one person enjoys a common benefit from a private road, each person shall contribute rateably to the cost of maintaining the private road, and shall have the right to bring a civil action to enforce the requirement of this section.

19 V.S.A. § 2702; see also Hubbard v. Bolieau, 144 Vt. 373, 375-76, 477 A.2d 972, 973 (1984) (recognizing longstanding "equitable principle that when several persons enjoy a common benefit, all must contribute rateably to the discharge of the burdens incident to the existence of the benefit"

12

and "obligation to contribute applies in the absence of an express agreement, its purpose being to prevent unjust enrichment" (quotation omitted) (citation omitted)).

¶ 34. We need not decide if proof of ownership is required to bring a claim under § 2702 because defendants agreed at oral argument to contribute rateably to the costs of maintaining the private road that provides access to the rear of their building. Defendants also indicated, however, that plaintiff has never billed them for any costs associated with maintaining the road or explained to them how their pro rata share was calculated, and they questioned whether, as a practical matter, plaintiff's claim for contribution was ripe.

¶ 35. Both parties presented evidence on this issue at trial. Plaintiff testified that there were multiple buildings that shared use of the driveway; plaintiff lives in one of these buildings. Plaintiff stated that defendants' tenant used the driveway a few times per week for deliveries and waste removal. Unlike other neighbors, defendants are not allowed to park behind their building. Plaintiff acknowledged that he had not recently asked defendants to contribute and that he had never billed them for any share of the maintenance costs. He did bill the other driveway users, but none had contributed, with minor exceptions.

¶ 36. Plaintiff sought $250 annually from defendants for maintenance costs, running from the date he filed this suit (May 2018), to be adjusted for the cost-of-living over time. He arrived at this value by reviewing his snow-removal expenses over the prior ten years. He concluded that they averaged about $1000 annually and he added to that sum his expenses associated with an expensive snow blower, his time spent plowing, lawn mowing, picking up garbage, and policing the parking lot. Plaintiff apparently calculated these costs at $250 per year. He asked that the court order defendants to pay one-fifth of his total plowing and maintenance costs, or $250 per year.

¶ 37. Plaintiff acknowledged that defendants' tenant had offered to contribute annually to road maintenance costs and that he had refused the offer. Mr. Poon similarly testified that his

offer to contribute to the road-maintenance costs was refused. There was also testimony by a prior building owner, Ms. Harmon, regarding cost sharing for alley/driveway maintenance during her years of ownership, which ended in 2018.

¶ 38. Given the state of the evidence, we cannot make any ruling on this issue. This Court is not a factfinder, and we cannot weigh this evidence on appeal. While defendants agree to pay a ratable share, we cannot determine as a matter of law what a ratable share would be. This is particularly true considering that the trial court has not yet weighed the persuasiveness of plaintiff's testimony about his costs; there are other neighbors who are also using the private drive and parking area, including plaintiff; and there appear to be different levels of use among neighbors, i.e., parking and/or deliveries. While we have previously found a pro rata division of expenses to be equitable, that may or may not be the case here. See Khan v. Alpine Haven Prop. Owners' Ass'n, 2020 VT 90, ¶¶ 39-40, __ Vt. __, 245 A.3d 1234 (finding it equitable for lot owners to pay pro rata share of costs for maintaining all roads within housing development as lot owners had right to use all roads, including those providing direct access to their lots (citing Restatement (Third) of Prop.: Servitudes § 4.13 cmt. e (2000) (recognizing that "basis of fair apportionment will vary depending on the circumstances") (additional citation omitted))); Hubbard, 144 Vt. at 374-75, 477 A.2d at 973 (holding that defendant lot owners must pay "pro rata share of costs for the maintenance of a common roadway" based on "the equitable principle that when several persons enjoy a common benefit, all must contribute rateably to the discharge of the burdens incident to the existence of the benefit" (quotation omitted)); see also Freeman v. Sorchych, 245 P.3d 927, ¶ 24 (Ariz. Ct. App. 2011) (discussing factors relevant to equitable apportionment of costs of maintaining shared easement); In re Goldsmith's Estate, 25 N.Y.S.2d 419, 424 (Sur. Ct. 1940) ("A ratable contribution normally means a contribution by everybody in accordance with the benefits received."). There may also be questions regarding the notice provided to defendants about what is allegedly owed and for what services. See Freeman, 245

14

P.3d 927, ¶ 23 (concluding that "a defendant should receive notice and a reasonable opportunity to participate in decisions regarding repairs and maintenance before liability attaches" and "the duty to pay should be imposed only for necessary and reasonable maintenance and repairs, performed adequately and properly and at a reasonable price" (citations omitted)).

¶ 39. Because we cannot resolve these questions on this record, we remand this claim to the trial court for factual findings, to the extent they can be made in light of the evidence presented, given defendants' agreement that they will "contribute rateably to the cost of maintaining the private road." 19 V.S.A. § 2702.

¶ 40. Finally, plaintiff argues that the court erred in denying his motion for reconsideration and a new trial. He contends that he was prejudiced by the failure of the recording system to capture important testimony from his expert, including the basis for his expert opinion. Plaintiff argues that this testimony was pivotal because the court ruled against him, and he contends that its absence prevents him from demonstrating to this Court that the expert's testimony sufficed to meet plaintiff's burden of proof. Plaintiff acknowledges that the trial court stated that it took detailed notes on the testimony, but he asserts that that is not helpful to our review here.

¶ 41. We review the court's denial of plaintiff's motion for abuse of discretion and "view the evidence in the light most favorable to the prevailing party." N. Sec. Ins. Co. v. Mitec Elecs., Ltd., 2008 VT 96, ¶ 34, 184 Vt. 303, 965 A.3d 447. We find no abuse of discretion.

¶ 42. The court considered and rejected plaintiff's argument that it should grant a new trial because there was an incomplete record of the trial and that appellate review would require a complete record. It explained that, during trial, the court's recording system failed for a brief period and did not record part of his land surveyor's testimony. Without explicitly arguing that plaintiff was prejudiced by the failed court recording, the court presumed that plaintiff would argue he was prejudiced by the failed court recording because the court did not rule in his favor. The court explained that it made extensive notes throughout the trial (including during the period in

15

which the recording system failed to record) and considered its notes when it made its conclusions. The court thus found that the brief failure of the recording system did not necessitate a new trial for purposes of appellate review.

¶ 43.    The court provided reasoned grounds for its decision.  Plaintiff does not identify what testimony is missing from the court's recording or how its omission would assist him in arguing that the court erred in concluding that he failed to meet his burden of proof.  Plaintiff could have sought to recreate the record under Vermont Rule of Appellate Procedure 10(f) to address this issue.  See V.R.A.P. 10(f) (providing in relevant part that "if anything material to either party is omitted by error or accident from . . . the record, the omission . . . may be corrected and a supplemental record may be certified and forwarded on stipulation of the parties" by superior court or Supreme Court); see also State v. Bain, 2009 VT 34, ¶ 10, 185 Vt. 541, 975 A.2d 628 (recognizing that "Vermont has defined procedures for reconstructing a missing record," and explaining that defendant "must show prejudice to the outcome of his case due to missing transcripts and must present something more than gross speculation that the transcripts were requisite to a fair appeal" (quotation omitted)).  In any event, as reflected above, the court decision turned on plaintiff's failure to submit a critical deed into evidence, and the missing portion of the record has no bearing on that conclusion.  We find no error in the court's denial of plaintiff's motion for reconsideration.[2]

We reverse and remand the court's dismissal of plaintiff's claim for contribution under 19 V.S.A. § 2702, and we affirm the remainder of the court's decision.

FOR THE COURT:

Associate Justice

---

[2]  We emphasize the limits of the trial court's decision, and our affirmance.  The trial court did not purport to decide who owns the disputed property; this was not a quiet title action.  The court only ruled that plaintiff failed to prove the essential elements of his trespass claim.